**In re Frank R. SPEECE, Jr., and Shirley M. Speece, Debtors.**

**Karl F. JACOBSON, Jr., Plaintiff,**

**v.**

**ROBERT SPEECE PROPERTIES, INC.; Frank R. Speece, Jr.; and Shirley M. Speece, Defendants.**

**Bankruptcy No. 91–20689–C–7. Adv. No. 91–2173.**

United States Bankruptcy Court, E.D. California.

Sept. 30, 1993.

Karl L. Jacobson, in pro. per.

Law Offices of Cindy Lee Hill, Sacramento, CA, for defendants.

Judith Hotze, Atty. Advisor, Sacramento, CA, for U.S. Trustee.

### MEMORANDUM DECISION ON MOTION TO APPROVE SETTLEMENT

CHRISTOPHER M. KLEIN, Bankruptcy Judge:

May a debtor purchase a chapter 7 discharge in settlement of an appeal from a judgment denying discharge? The appellate court remanded so that all parties in interest would have an opportunity to be heard. The motion to approve settlement will be denied.

### *Facts and Procedural History*

The plaintiff, a dogged creditor, proved at trial that the debtors concealed their interests in real and personal property, including a rental duplex, a Mercedes Benz 450SL automobile, and a partnership funded with proceeds of a condominium in Hawaii, with actual intent to hinder, delay, or defraud creditors. He also proved that the debtors knowingly and fraudulently made false oaths in materially false schedules and statements of financial affairs. Judgment accordingly was entered denying discharge on independent grounds pursuant to 11 U.S.C. §§ 727(a)(2)(A) and (a)(4)(A). The debtors timely appealed.

During the appeal, the debtors and the plaintiff ("Jacobson") agreed to settle on terms that (1) called for the debtors and their children (to whom property had been transferred) to transfer the rental duplex to the plaintiff and allow him to purchase the Mercedes Benz 450SL for $3,000 and (2) called for Jacobson to stipulate to vacating the judgment denying the discharge and dismissing the adversary proceeding with prejudice so that the debtors would receive a discharge. Jacobson would dismiss two related state court actions against the transferees of the hidden property. The defendants and their children would release Jacobson from liability for having secretly recorded a conversation allegedly in violation of California law. The granting of a chapter 7 discharge is a key feature of the settlement.[1]

The motion to approve settlement was filed with the appellate court, which remanded to this trial court for decision.[2]

---

1. Paragraph 12 of the settlement agreement provides, in pertinent part: "It is expressly understood between all parties [that] this settlement is subject to court approval of the dismissal of the adversary action and said dismissal is a condi-tion precedent to the enforcement of this settlement."

2. This is not, however, a motion to approve compromise pursuant to Federal Rule of Bank-

The United States trustee opposes settlement.

## I

Before addressing the substantive question, it is necessary to resolve the status of the United States trustee. The debtors try to neutralize the opposition by arguing that the United States trustee is powerless to intervene as a party plaintiff due to the statute of limitations. Although that position is doubtful, it need not be decided.[3]

■ The United States trustee is authorized by statute to raise and to appear and be heard on any issue in any bankruptcy case or adversary proceeding but may not file a chapter 11 plan. 11 U.S.C. § 307. This is a sweeping authorization that is sufficient to authorize the United States trustee to object to approval of Jacobson's settlement with the defendants.

■ There is a second reason to take the United States trustee seriously. The Bankruptcy Code expressly empowers the United States trustee to object to a chapter 7 discharge. 11 U.S.C. § 727(c)(1). It is a responsibility of the United States trustee, as one facet of assuring that the bankruptcy laws are not being abused, to assure that persons who are not entitled to receive discharges do not receive them. Thus, the United States trustee has special competence and cannot be ignored in a matter in which the question is whether to permit a discharge.

## II

■ The parties agree that the proposed compromise can be approved only if it is "fair and equitable." *Woodson v. Fire-*

*man's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir.1988); *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380–81 (9th Cir.1986); *cf. Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25, 88 S.Ct. 1157, 1163–64, 20 L.Ed.2d 1 (1968).

Under the fair and equitable standard, the court considers: (a) probability of success in the litigation; (b) collectability; (c) complexity, expense, inconvenience, and delay attendant to continued litigation; and (d) the interest of creditors. The interest of creditors is paramount, and the court must give proper deference to their reasonable views. *Woodson*, 839 F.2d at 620. A fifth factor applies under the fair and equitable test when a denial of discharge is involved: the public interest in proper administration of the bankruptcy laws must be considered.

## A

■ Assessing the probability of success in the litigation requires speculation about the merits of the appeal filed by the debtors. The appeal has not been briefed. The issues are said, in the motion papers, to be sufficiency of the evidence and applicability of the continuing concealment doctrine.

The findings of fact and conclusions of law rendered at the conclusion of trial remain undisturbed and, unless and until reversed, establish the law of the case for such purposes as considering settlement.

According to those determinations, the debtors concealed property interests in a rental duplex, a Mercedes–Benz 450SL, and a business partnership. And it was found

---

ruptcy Procedure 9019(a) as it is made by chapter 7 debtors rather than by the trustee. The procedure contemplated by that rule has, however, been followed.

**3.** I also decline the invitation to rule on intervention by the United States Trustee as a party plaintiff or substitution (see Federal Rules of Civil Procedure 24 and 25, incorporated by Federal Rules of Bankruptcy Procedure 7024 and 7025) and on the limitations question, because the terms of the remand from the Bankruptcy Appellate Panel restrict my authority to consideration of the motion to compromise and, if

granted, to vacation of the judgment denying discharge. There is, however, substantial jurisprudence on the subject of post-judgment intervention. *United Airlines v. McDonald*, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977); *Officers for Justice v. Civil Serv. Comm'n*, 934 F.2d 1092, 1095 (9th Cir.1991) (sixteen years after judgment); *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659 (9th Cir.), *cert. denied*, 439 U.S. 837, 99 S.Ct. 123, 58 L.Ed.2d 134 (1978); 7 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 1916 (1993).

that they knowingly and fraudulently made false oaths with respect to undisclosed sole proprietorships (Speece Management Company and Shirley's Interiors) from which the debtors derived $40,000 in income in 1990, as well as with respect to beneficial interests in property and property held for others. These and other findings caused the discharge to be denied on adequate, independent grounds. Nor was it a close case on any of the grounds, the evidence having been clear and convincing notwithstanding that the applicable standard of proof is preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 289, 111 S.Ct. 654, 660, 112 L.Ed.2d 755 (1991).

The denial of discharge for concealing property under section 727(a)(2)(A) turned on application of the so-called continuing concealment doctrine because of the requirement that the requisite acts occur within one year before the date of the filing of the petition. The property, the interest in which was concealed, was initially transferred by the debtors to their children more than one year before the case was filed. The secretly retained interest remained concealed within the year before bankruptcy and was not disclosed at the time of filing or at the section 341 meeting.[4]

Although the Ninth Circuit has not expressly ruled on the application of continuing concealment doctrine, I remain persuaded that the Fifth Circuit accurately stated the law in *Thibodeaux v. Olivier (In re Olivier)*, 819 F.2d 550 (5th Cir.1987):

> On its face, section 727(a)(2)(A) addresses only transfers or concealment of property occurring within a year before bankruptcy. Here the purported transfer by appellants occurred more than a year before bankruptcy, but appellants contin-

ued the concealment of their secretly retained interest in the property. The courts below relied on the well-settled doctrine that in this character of situation the concealment of an interest in an asset that continues, with the requisite intent, into the year before bankruptcy constitutes a form of concealment which occurs within the year before bankruptcy and, therefore, that such concealment is within the reach of section 727(a)(2)(A).

> The doctrine of continuing concealment developed and was followed under predecessor provisions of the bankruptcy laws and continues to be followed in more contemporary decisions. Recognizing that we have not heretofore addressed whether the continuing concealment doctrine will be followed within this Circuit in discharge cases involving 11 U.S.C. § 727(a)(2)(A), we now hold that it may be appropriately applied to such cases.

*Olivier*, 819 F.2d at 554–55 (footnotes omitted). Commentators agree. 2 D. Epstein, S. Nickles & J. White, *Bankruptcy* § 7–19 at 320 (1992).

Since I think that the Ninth Circuit would agree with the Fifth Circuit, the debtors face a low probability of success on that issue.

Even if the appellate court were to hold that the continuing concealment doctrine does not apply, the error is likely harmless because the debtors would also have to prevail on their challenge to the sufficiency of the evidence of false oaths per section 727(a)(4)(A) in order to achieve a reversal. Even ignoring the false oaths regarding the property that was at issue under the continuing concealment doctrine,[5] false oaths sufficient to warrant denial of discharge were entailed in the failure to disclose Speece Management Company and

---

4. The debtors filed amended, but still materially false, schedules after Jacobson filed this action objecting to discharge. Those amendments were filed July 8, 1991. The debtors' three children (to whom the property in issue had been transferred) filed individual bankruptcy cases on July 11, 25, and 31, 1991, each represented by different counsel and in none of which was there reference to their parents' case or a listing of Jacobson as a creditor.

5. Which I do only for purposes of analysis of the proposed settlement. Schedules and statements of financial affairs executed under penalty of perjury that do not disclose the secretly retained property interests on which the continuing concealment ruling was predicated nevertheless contain false oaths sufficient, under the facts of this case, to warrant denial of discharge.

Shirley's Interiors in either the original or amended statement of financial affairs.

As the evidence, from the perspective of the trier of fact who disbelieved the defendants' testimony,[6] was ample on the independent ground for denying discharge under section 727(a)(4)(A), probability of successfully attacking the denial of discharge is low.

### B

Potential difficulties in the matter of collection are not pertinent. The judgment merely denies discharge on the independent grounds previously described.

### C

The appeal does not pose particularly complex issues. The primary question of law, the applicability of the continuing concealment doctrine, is straightforward. Nor is sufficiency of evidence adduced during a two-day trial difficult to review. To be sure, time, inconvenience, and expense is entailed in every appeal; but nothing suggests that any deviation from the norm is present here.

Although continued litigation will be inconvenient to Jacobson and the debtors, there are also the interests of more than forty other creditors to consider. They are beneficiaries of the denial of discharge and they face the potential of realizing a dividend. Under the terms of the settlement that call for property to go to Jacobson alone and for the discharge to be granted, they would be wiped out.

### D

The interest of creditors in connection with the settlement has two facets that are best assessed separately: the property to be exchanged among the settling parties; and the effect of vacating the judgment denying discharge.

With respect to the exchange of property, the interest of creditors is measured by the potential for a dividend. Under the current posture of the case, the estate has an interest in the rental duplex and in the Mercedes–Benz 450SL. The value of the rental duplex is said to be $160,000 and, if an allegedly defective encumbrance is successfully avoided,[7] will have net equity of $125,000. The value of the automobile is not stated, but Jacobson would be paying $3,000 for it under the settlement agreement.

There are more than forty creditors with claims, according to the schedules, exceeding $500,000.[8] Although further litigation may be needed, creditors face a possibility of sharing a dividend that, even accounting for litigation risk, is not insubstantial. The settlement would result in no opportunity for a dividend for the creditors. Thus, they would be disserved by property redistribution aspects of the settlement.

With respect to vacatur of the judgment denying discharge, the interest of creditors is measured by their post-bankruptcy rights. In the current posture of the case, the discharge stands as denied. The debtors' nonexempt property, if any, will be gathered and distributed by the bankruptcy trustee in accordance with the distribution scheme. 11 U.S.C. § 726. Thereafter, each creditor will be able to pursue its rights under state law. It is immaterial that after bankruptcy some creditors undoubtedly will be better off than others because they have better rights, better bargaining power, better collectors, or better luck.

---

6. The written findings of fact and conclusions of law included the following:
   I specifically did not believe the defendants in their testimony regarding their lack of ownership of interests in various items of property and in businesses. The purpose of their transactions was to hide from their creditors.
   Findings Of Fact And Conclusions Of Law at 14.

7. The settling parties agree to cooperate in that matter.

8. No deadline has been fixed for filing proofs of claim, a notice of insufficient assets to pay a dividend having been given pursuant to Federal Rule of Bankruptcy Procedure 2002(e). Proofs of claim nevertheless filed by other unsecured creditors total $87,391.85. Jacobson filed a proof of claim for $104,563.94.

The salient point is that when a discharge is denied, no creditor will face a defense of discharge in bankruptcy and the statutory injunctions attendant to a discharge. 11 U.S.C. § 524(a). If the discharge were to be granted, the rights of every creditor against the debtor would be terminated. , Vacating the judgment denying discharge does not serve the interest of creditors.

■ The "paramount" status afforded to the interest of creditors recognizes that the decision to settle or litigate is an investment decision that puts at risk their money and their rights. Accordingly, this factor has relatively greater weight than probability of success, collectability, complexity, expense, inconvenience, and delay. *See Woodson*, 839 F.2d at 620.

### E

The matter of the debtors' entitlement to discharge is an issue that transcends what the creditors want and that implicates the public interest in the proper administration of the bankruptcy laws. Two aspects are implicated in this case.

First, there is the discharge itself. Although the presumption favors discharge, 11 U.S.C. § 727(a),[9] the discharge has aspects of both carrot and stick. It is an inducement to cooperate with the trustee and creditors in assembling assets.[10] The prospect of denial simultaneously serves a deterrent function, both for the debtors and for future debtors.

■ The question of discharge is personal to the debtors. The focus is on them. Thus, lack of injury to creditors is irrelevant for purposes of denying the discharge. *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1343 (9th Cir.1986); *Davis v. Davis (In re Davis)*, 911 F.2d 560, 561–62 (11th Cir.1990).

Preservation of the integrity of the bankruptcy system is one reason that the United States trustee is authorized to object to discharge. 11 U.S.C. § 727(c)(1). And it is one reason the court is empowered to order the case trustee to examine whether any ground exists to deny discharge. 11 U.S.C. § 727(c)(2).[11]

It is injury enough that a trial was necessary to establish material information that the debtors were required to put in their schedules and statement of financial affairs in the first instance. *Cf. Davis*, 911 F.2d at 562 n. 2. And it is injury enough that the award of a discharge when the facts disentitle the debtors to a discharge would not inspire confidence in the integrity of the bankruptcy process.

The second public aspect is suggested by the nature of the purchase price for the discharge. The purchase price would be a transfer of the property that rightfully belonged in the estate from the outset, but which price would be paid only to the creditor who prosecuted the adversary proceeding objecting to discharge.

The fact that the Congress has criminalized knowing and fraudulent attempts to obtain property, remuneration, or advantage for acting or forebearing to act in any bankruptcy case suggests that any efforts to extract special treatment not otherwise authorized by the Bankruptcy Code should

---

**9.** The preambular language of section 727(a) is: "The court shall grant the debtor a discharge, unless—". 11 U.S.C. § 727(a).

**10.** Professor Baird notes:

> The Statute of 4 Anne ch. 17 (1705), which instituted the discharge in bankruptcy, was in fact called "An act to prevent frauds frequently committed by bankrupts."

D. Baird, *The Elements of Bankruptcy* at 37 n. 38 (1992).

**11.** Although this subsection contemplates a party in interest having made a request, the Congress has clarified that the court may also act sua sponte:

> No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a), Pub.L. 99–554, § 203, 100 Stat. 3088, 3097 (Oct. 27, 1986), *legislatively rev'g*, *Gusam Restaurant Corp. v. Speciner (In re Gusam Restaurant Corp.)*, 737 F.2d 274 (2d Cir. 1984).

be viewed with skepticism. 18 U.S.C. § 152.

■ The reward for a creditor who recovers concealed property or successfully objects to discharge is payment of actual, necessary expenses plus reasonable compensation. 11 U.S.C. §§ 503(b)(3) and (4). The creditor is not entitled to expropriate the concealed property.

In sum and on balance, the settlement, considered in light of the exchange of property, is not fair and equitable.

### III

Fundamental difficulties are posed by a post-judgment settlement among litigants that would confer a discharge to which the debtors are not entitled. In other words, the question is whether the debtors should be able to purchase a discharge to which they are not entitled as a matter of law.

The situation is closely analogous to vacatur of a judgment following mootness on appeal. The inquiry required in such situations informs the analysis here.

Assuming a settlement on appeal in this case, vacatur of a judgment on account of mootness would not be automatic because the appellant has participated in the act of rendering the appeal moot. Rather, the proper procedure would be to remand the matter to the trial court "for a determination of 'the consequences and attendant hardships of dismissal or refusal to dismiss' and the balancing of 'the competing values of finality of judgment and right to relitigation of unreviewed disputes.'" *Independent Union of Flight Attendants v. Pan American World Airways*, 966 F.2d 457, 460 (9th Cir.1992) (quoting *Ringsby Truck Lines, Inc. v. Western Conference of Teamsters*, 686 F.2d 720, 722 (9th Cir. 1982)). This is an exception to the general rule stated in *United States v. Munsingwear, Inc.*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950).

### A

Preliminarily, it bears repetition that the nature of a creditor's action to deny discharge, in contrast to an action to determine that a particular debt is nondischargeable, is more than a mere two-party dispute.

The debtors are asking to be allowed to purchase a discharge to which they are, as a matter of law and fact, not entitled. Specifically, the law of the case is that the debtors are not entitled to a discharge because they made false oaths and, independently, because they concealed property.

Moreover, the trial of this adversary proceeding produced a precedent, which has social value created at a cost to the public and other litigants. The denial of discharge is a public act of a public official that is not the parties' property. *See In re Memorial Hosp. of Iowa, Inc.*, 862 F.2d 1299, 1302 (7th Cir.1988). Permitting parties to bargain to vacate the judgment denying discharge would discourage pretrial settlements and would confer an inappropriate windfall on the winning party in the form of an opportunity to gain a more favorable settlement by selling off the public advantages of the judgment. Fisch, *The Propriety of Eradicating Prior Decisional Law Through Settlement Agreement and Vacatur*, 76 Cornell L.Rev. 589, 637–41 (1991).

■ Thus, the rules of procedure forbid voluntary dismissal without notice to the case trustee and to the United States trustee, either of whom were entitled to bring the action in the first instance, so that they may have an opportunity to protect the rights of their constituencies.[12] Fed.R.Bankr.P. 7041. Protecting such rights normally requires intervention in the existing adversary proceeding because the short deadline for filing another such ac-

---

**12.** The trustee has a duty to object to the discharge if advisable. 11 U.S.C. § 704(6). Other parties in interest, including creditors and the United States trustee, also have standing to maintain an adversary proceeding objecting to discharge. 11 U.S.C. § 727(c)(1). The realities are that trustees commonly take a back seat when a creditor objects to discharge in order to conserve resources, and that debtors tend to attempt to purchase peace with a plaintiff who is genuinely jeopardizing discharge.

tion ordinarily has passed and cannot be enlarged retroactively. Fed.R.Bankr.P. 4004(a) and 9006(b)(3).

## B

The consequences and hardships of dismissal or refusal to dismiss are evident from the nature and effect of the discharge.

■■■■ The chapter 7 discharge discharges debtors from all debts that arose before the date of the order for relief under chapter 7, except nondischargeable debts. 11 U.S.C. § 727(b). The discharge affects all creditors by voiding past and future judgments establishing debtors' personal liability for debts subject to the discharge and permanently enjoining them from chasing debtors. 11 U.S.C. § 524(a). Debtors achieve their so-called "fresh start" primarily because of the discharge. Denial of a discharge is a hardship to the debtors.

■■■■ Correlatively, denial of a discharge, once it becomes final, means that judgments remain valid, no discharge injunction will apply and, except with respect to property of the bankruptcy estate, the automatic stay is terminated. 11 U.S.C. § 362(c)(2)(C). It follows that hardship is visited upon the rights of creditors by dismissal following a judgment denying a discharge.

■■■■ The choice between the hardships is influenced by the important public policy that a discharge in bankruptcy should be granted only to those who are entitled to it. That policy is reflected by a statutory list of factors disqualifying debtors in specific circumstances. 11 U.S.C. § 727(a). Debtors who conceal their property with intent to hinder, delay, or defraud creditors within one year before bankruptcy are not entitled to a discharge. 11 U.S.C. § 727(a)(2)(A). Debtors who knowingly and fraudulently make a false oath or account in the case are not entitled to a discharge. 11 U.S.C. § 727(a)(4)(A). In the current posture of this case, both of these disqualifiers apply to make the debtors ineligible for discharge.

Since the debtors are not eligible for discharge, dismissal would cause the greater hardship to fall on the creditors.

## C

Balancing the competing values of finality of judgment and right to relitigation of unreviewed disputes easily resolves itself against vacatur. First, there was a two-day trial during which the issues were fully litigated on the merits. No error warranting reversal of the judgment is immediately apparent. Second, the unresolved dispute could not be relitigated because the time for filing an adversary proceeding objecting to discharge expired long ago and cannot be enlarged retroactively. Fed. R.Bankr.P. 4004(a) and 9006(b)(3).

Moreover, permitting vacatur of a judgment denying discharge in response to return of concealed property would create the wrong incentive. It would become worthwhile to hide property at the time of filing bankruptcy in the expectation that, if the debtor loses any ensuing objection to discharge litigation, the discharge could be retrieved by handing over the hidden property.

The correct incentive encourages the debtor to disclose concealed property earlier, not later, in the case. Such an incentive underlies the rule in this circuit with respect to improperly transferred property that "a debtor who transfers property within one year of bankruptcy with the intent penalized by section 727(a)(2)(A) may not be denied discharge of his debts if he reveals the transfers to his creditors, recovers substantially all of the property before he files his bankruptcy petition, and is otherwise qualified for a discharge" and similarly may have a discharge in an involuntary case but "the debtor must be making a *good faith effort to recover the property prior to the filing of the involuntary petition*" and "*must actually recover the property within a reasonable time after the filing of the involuntary petition.*" *Adeeb*, 787 F.2d at 1345–46. *Contra Davis*, 911 F.2d at 562.

■ Waiting until after the discharge is denied is waiting too long. Once a judgment is entered denying discharge, vacatur of judgment on account of subsequent settlement that calls for transfer of property that was concealed with the intent penalized by section 727(a)(2)(A) is not appropriate. Where the judgment is also premised on false oaths made with the intent penalized by section 727(a)(4)(A), a vacatur is even more inappropriate.

The debtors should not be allowed to purchase a discharge to which, as a matter of law, they are not entitled.

\* \* \*

The motion to approve settlement will be denied. An appropriate order will issue.