**In re Margaret B. WILSON, Debtor.**

**Bankruptcy No. 95–10108.**
**Adv. No. 95–1718.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

June 7, 1996.

Mary Ann Rabin, Rabin & Rabin Co., L.P.A., Cleveland, Ohio, for plaintiff.

Winston Grays, Cleveland, Ohio, for defendant.

*MEMORANDUM OF OPINION AND ORDER*

RANDOLPH BAXTER, Bankruptcy Judge.

Before this Court is the Trustee's Motion to Compromise Claim arising from a Complaint to Revoke Discharge pursuant to 11

U.S.C. § 727(a)(2)(A) and (B) and Rule 9019(a) Bankr.R.. If approved, the compromise provides for the dismissal of all claims that the Trustee has against the debtor. No objection to the compromise has been filed; the Trustee asserts that approval of the motion is in the best interest of the creditors.

The Trustee based her Motion on the Debtor's post-petition misuse of bankruptcy estate funds. In the process of examining the Debtor, the Trustee discovered that the Debtor had received $100,000 from the settlement of a pre-petition personal injury suit, that she paid $40,000 to her attorney, spent $10,000 for herself, and gave the remaining $50,000 to her daughter as a gift. Debtor retained control over these funds through an automatic teller (ATM) card which the debtor kept in her possession. Debtor continually drew against the account after the bankruptcy was filed and had withdrawn $13,230 so as to pay balances on five credit cards that she had listed on her petition. The Trustee noted that "[t]he only debts [debtor] was not paying were her medical bills." (See, Complaint). In her Complaint to Revoke Discharge, the Trustee alleged that the Debtor had "hindered and defrauded the trustee by continually giving false information or failing to provide information that she controlled the money that she received from a personal injury settlement and, in fact, was continuing to draw on the money every month since the filing of the bankruptcy case." The Trustee has recovered $21,568.05 from Debtor's daughter and has taken action to recover $13,230 from the credit card companies that have received the post-petition transfers of estate property.

Despite these substantial allegations, the Trustee now wishes to compromise all claims against the Debtor for the amount of $2,500. The Trustee reasons that if the Debtor is denied discharge, she will "probably not [be] collectable ... [and] that it would be in the best interest of the estate to accept the offer and compromise the claim since more moneys will be generated to distribute to creditors."

Title 11 U.S.C. § 727 provides in part:

(a) The court shall grant the debtor a discharge unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of the property under this title has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition.

In whole, § 727 is a Congressional codification of the conditions an individual debtor must meet to obtain a bankruptcy discharge. This section obligates the court to grant or deny discharge based on these conditions. The court in *Brown v. Felsen,* 442 U.S. 127, 128–29, 99 S.Ct. 2205, 2207–09, 60 L.Ed.2d 767 (1979), commented on the discharge provision of the Bankruptcy Act of 1898 and stated:

Through a discharge, the Bankruptcy Act provides a "new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt," *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). By seeking discharge, however, respondent placed the rectitude of his prior dealings squarely in issue, for, as the Court has noted, the Act limits that opportunity to the "honest but unfortunate debtor." Ibid.

Title 11 U.S.C. § 105 grants the Bankruptcy Court the power take action, *sua sponte,* or make "any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent abuse of the process." Pursuant to Rule 9019 Bankr.R., it is within the Bankruptcy Judge's discretion whether to approve a compromise or settlement. Section 727, when read under the light of the Supreme Court's comments in *Brown* and in conjunction with 11 U.S.C. § 105 and Rule 9019, requires this Court to evaluate important public policy considerations which are raised by the Trustee's Motion to Compromise Complaint.

Other courts have addressed this very same issue, whether an objection to discharge pursuant to § 727 is ever the "proper subject for contractual negotiation." *In re Moore*, 50 B.R. 661, 664 (Bankr.E.D.Tenn 1985). In *Moore*, the trustee and the FDIC jointly sought approval of a settlement of its § 727(a)(2) adversary proceeding. No party made an objection to the proposed compromise to dismiss the adversary proceeding. Despite the absence of an objection, the court declined to approve the compromise. The *Moore* court concluded;

> Because it involves questions of public policy previously determined by the Congress, a discharge in bankruptcy is not an appropriate element of a *quid pro quo*. Tying withdrawal of objections to discharge to settlement of other actions is contrary to public policy. Under no circumstances, not even where the intent is innocent, may a debtor purchase a repose from objections to discharge. A discharge in bankruptcy depends on the debtor's conduct; it is not an object of bargain.

*In re Moore*, 50 B.R. 661 at 664. The court in *In re Vickers*, 176 B.R. 287, 290 (Bankr.N.D.Georgia) declined to approve the trustee's motion to compromise his § 727 adversary proceeding. The *Vickers* court criticized the trustee for not providing any "cogent analysis of the basis on which he might win or lose the litigation." The *Vickers* court, agreeing with the *Moore* court that discharges are not property of the estate and are not for sale, reasoned;

> Selling discharges would be a disease that would attack the heart of the bankruptcy process, its integrity. A trustee seeking to get paid may coerce an honest debtor into paying something to get rid of a complaint that has no merit. A dishonest debtor may cover up even greater sins than those that gave rise to the complaint in the first place.

*In re Vickers*, 176 B.R. at 290. The Court in *In re Levy*, 127 F.2d 62, 62 (3rd Cir.1942) found an offer of $5,000 by a third party to compromise a turnover proceeding on the condition that the creditor's committee would not oppose the debtor's discharge to be an illegal compromise. The *Levy* court reasoned;

> Any offer of that character is wholly illegal. The reason is plain. Discharge is not personal to the creditors. It is general to the public ... This general protection cannot be waived by particular creditors whose private greed outruns their community spirit.

*In re Levy*, 127 F.2d 62 at 63; see *In re Hammerstein*, 26 Am.B.R. 757, 758 (2d Cir. 1911) (Discharge "is refused to a dishonest bankrupt as a punishment for his fraud and to prevent its continuance in the future. In a sense the question has passed beyond the creditors and is one of public policy...."). A noted treatise also expressed the view that "[i]t is improper for a debtor to offer or for a creditor to receive any consideration for the doing or forbearance of any act. The fraudulent payment or receipt of consideration for withdrawal of a complaint objecting to discharge, i.e., the dismissal of this type of adversary proceeding, is a criminal offense. *Collier on Bankruptcy*, ¶ 7041.03 (15th ed. 1988) (p. 7041–5–6).

In addition to the strong policy disfavoring compromise of complaints pursuant to 11 U.S.C. § 727, statutory support, and persuasive decisions issued by other courts, this Court's consideration of the Trustee's Motion acknowledges yet a different pillar of reasoning. The court in *In re Speece*, 159 B.R. 314 (E.D. California 1993), applied a "fair and equitable standard" to the facts at hand and concluded that it would not be fair and equitable to permit settlement of a creditor's adversary proceeding opposing discharge. In *Speece*, the creditor's adversary proceeding pursuant to § 727(a)(2)(A) and (a)(4) was successful at trial. Pending appeal, the parties proposed a settlement. The settlement was returned to the bankruptcy court, at which time the trustee opposed settlement. In applying the "fair and equitable standard" the *Speece* Court considered;

> (a) probability of success in the litigation; (b) collectability; (c) complexity, expense, inconvenience; and delay attendant to continued litigation; and (d) the interest of creditors. The interest of creditors is paramount, and the court must give proper

deference to their reasonable views.... A fifth factor applies under the fair and equitable test when a denial of discharge is involved: the public interest in proper administration of the bankruptcy laws must be considered.

*Speece,* 159 B.R. at 317.

In this case the Debtor received a discharge of debts totaling $55,729.14. The Trustee is now willing to compromise her adversary proceeding in exchange for a payment of $2,500; approximately four percent (4%) of the amount discharged. The Trustee's sole rationale for compromising all claims against the Debtor is that the Debtor "is probably not collectable" and that "it would be in the best interest of the estate to accept the offer and compromise the claim since more moneys will be generated to distribute to creditors." The Trustee's Complaint to Revoke Debtor's Discharge was duly filed in light of the rather serious allegations contained therein. She does not offer any evidence to support her proposed acceptance of the compromise offer notwithstanding her rather broad and unsubstantiated assumption that, somehow, more moneys will be generated to creditors. While the Trustee has not demonstrated the first three elements of the "fair and equitable" test, this Court places greater emphasis on the last two elements of the test expressed by the *Speece* court, which are adopted herein.

The Trustee's filed her Complaint to Revoke Debtor's Discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and (B) in light of rather serious allegations contained therein. For the Trustee to propose acceptance of the compromise offer of $2,500 on the basis that "... more moneys will be generated to distribute to creditors," is both unsubstantiated and is violative of the letter and spirit of 11 U.S.C. § 727(a)(2)(A) and (B). Of the $100,-000 which the Debtor received pre-petition, the Trustee has recovered $21,568.05 and has taken action to recover $13,230 from the credit card companies that have received the post-petition transfers of estate property. Thus, disregarding the $40,000 transfer to Debtor's attorney, $25,201.95 remains currently uncollected. This amount has been removed from the estate on account of the Debtor's unauthorized post-petition transfers; it is estate property, pursuant to § 541(a) of the Bankruptcy Code, which the Debtor has wrongfully converted without court approval. The Trustee's proposed acceptance of $2,500 is unreasonable under these circumstances.

Further, to allow a compromise in any amount, other than what the debtor allegedly misappropriated from the estate, is tantamount to allowing her to purchase her discharge of $55,729.14 for the amount of $2,500 which she proposes to pay. Not only is such a compromise unreasonable, but is discordant with the letter and spirit of 11 U.S.C. § 727(a)(2)(A) and (B). The proposed compromise is not in the "best interests of the estate," nor does it generate "more moneys ... to distribute to creditors." If the Trustee is successful in her litigation, the Debtor's discharge will be revoked. Such a revocation, will offer the Trustee and the Debtor's unsecured creditors the opportunity to collect on those debts that have been discharged. Such a result would be more beneficial to the estate and the unsecured creditors than the proposed compromise of $2,500. Further, respecting the public's interest in the proper administration of the bankruptcy laws dictates denial of the Trustee's proposed compromise. For the foregoing reasons, the Trustee's Motion to Compromise Claim is not fair and equitable, unreasonable, and provides no meaningful benefit to the Debtor's bankruptcy estate, and is hereby denied.

IT IS SO ORDERED.