**In re Brian J. ALMENGUAL and Suzanne C. Warner–Almengual, Debtors.**

**C. David Butler, United States Trustee, Plaintiff,**

v.

**Brian J. Almengual and Suzanne C. Warner–Almengual, Defendants.**

**Bankruptcy No. 01–01913–8W7. Adversary No. 03–89.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Nov. 13, 2003.

Bernard J. Morse, Morse & Gomez, P.A., Tampa, FL, for Debtors.

Theresa M. Boatner, Office of the U.S. Trustee, Timberlake Annex, Tampa, FL, for United States Trustee.

Herbert R. Donica, Tampa, FL, for Chapter 7 Trustee.

Andrea P. Bauman, Highland City, FL, Chapter 7 Trustee.

## ORDER AND MEMORANDUM OPINION

MICHAEL G. WILLIAMSON, Bankruptcy Judge.

This adversary proceeding was filed by C. David Butler, United States Trustee ("U.S. Trustee"), seeking a revocation of the discharge of the Debtors, Brian J. Almengual and Suzanne C. Warner–Almengual ("Debtors"), pursuant to Bankruptcy Code sections 727(d)(1)(discharge obtained through fraud) and 727(d)(2) (failure to report property acquired post-petition or to deliver such property to Trustee). The Court, by previous order, bifurcated the trial to deal initially with the Debtors' affirmative defense that a general release ("Release") given to the Debtors in connection with settlement of a motion for turnover (Document No. 106 in main case)("Turnover Motion") filed by the chapter 7 trustee ("Trustee") operates to bar this adversary proceeding.

After carefully reviewing the exhibits admitted at trial, pleadings and stipulations filed by the parties, other facts established as a matter of record in the court file, and written arguments of the parties—including the authorities cited by the

parties—the Court concludes that the broad language of the Release binds the U.S. Trustee and applies to the claims for relief being asserted in this adversary proceeding. However, after considering more fully the circumstances and procedures leading up to this Court's prior approval of the compromise on the Turnover Motion under which the Release was given, the Court concludes that the approval of the compromise was in error and must be vacated.

### Findings of Fact

On February 7, 2001, the Debtors filed a petition under chapter 13 of the Bankruptcy Code (Plaintiff's Exhibit No. 29). The Debtors were unable to confirm their chapter 13 plan and subsequently converted their case to one under chapter 7. After a series of schedule amendments and resolution of the Trustee's objections to the Debtors' claims of exemptions, on July 11, 2002, the Trustee filed the Turnover Motion seeking turnover of the Debtors' nonexempt property to include their interest in a revocable trust.

The Court scheduled an evidentiary hearing for October 15, 2002, on the Turnover Motion, at which time the Trustee and Debtors announced that they had settled the Turnover Motion for "$100,000 in exchange for a release." Transcript of October 15, 2002, Hearing, Defendants' Exhibit No. 4. Both the Trustee and Debtors' counsel assured the Court that the proposed settlement would take care of all pending or potential litigation involving the Debtors. The U.S. Trustee was not present at this hearing.

That same day, the Trustee filed a motion to compromise controversy with respect to the settlement announced in open court, using the negative notice procedure authorized by local rules under M.D. Fla. L.B.R. 2002–4 (the "Compromise Motion")

(Plaintiff's Exhibit No. 16). The negative notice procedure provides an opportunity for objections to be filed, failing which the Court can determine the contested matter on the papers without a hearing. The Trustee served all creditors and the U.S. Trustee with the Compromise Motion.

Debtors' counsel drafted the Compromise Motion with minimal input from the Trustee's counsel. The Compromise Motion is divided into six sections, all bearing descriptive titles as set forth below. The contents of these sections is summarized as follows:

### Summary of the Compromise Motion

1. *"Background and Description of Dispute."* This section describes a trust claimed by the Trustee to be property of the estate and which was the subject of the Turnover Motion. There is no reference in this section to the failure of the Debtors to initially list on their schedules the trust assets as well as a number of other assets that form the basis for the U.S. Trustee's contention that the Debtors obtained their discharge through fraud in the intentional omission of substantial assets from their schedules. Complaint, para. 62.

2. *"The Trustee's Position."* As stated in this section of the Compromise Motion, the Trustee's position is that all assets in the trust are property of the estate. This section also sets forth the Trustee's demand that certain household goods, to the extent they exceed the allowed personal property exemption, should be turned over to the Trustee. No mention is made as to the Trustee's position with respect to any concealment or nondisclosure of assets, nor is there any reference to a potential section 727 action.

3. *"The Position of the Debtors and Mr. Warner's Children."* It was the position of the Debtors and their children that

all of the assets in the trust are not property of the bankruptcy estate or, alternatively, that the value of the trust assets and other non-exempt personal property was no more than $12,500. The children also assert a constructive trust on those assets. The Debtors make no mention whatsoever of a potential 727 action.

4. *"The Terms of the Compromise."* Under the terms of the compromise as set forth in the Compromise Motion, the Trustee is to receive $100,000 in exchange for a release having the following terms:

> The chapter 7 Trustee shall release any and all further claims that the estate could bring to any assets of the Debtors, ... *as well as release any in personam claims* against such entities.... Such release shall be binding upon the chapter 7 Trustee, the bankruptcy estate and all creditors and *parties in interest* in this case.

Compromise Motion, Plaintiff's Ex. 15, para. 10 (emphasis supplied).

5. *"The Trustee's Reasons Why the Compromise Should be Approved."* The Trustee's reasons for entering into the compromise are described in terms of the monetary recovery to the estate in the range of $125,000 to $150,000, the fees that would be incurred in connection with litigating "the issues described above," the administrative expenses that would be incurred in dealing with the property once turned over, the risks of litigation, and the fact that the $100,000 would result in a significant distribution to creditors. Again, there was no mention in this section of discharge litigation under section 727.

The attorney for the U.S. Trustee acknowledged receipt of the Compromise Motion. After reviewing it, she did not file any objection. Nor did any other party in interest file an objection to the Compromise Motion. Accordingly, on November 13, 2002, the Court duly entered an order granting the Compromise Motion. The compromise was effectuated by the Debtors' subsequent payment to the Trustee.

On February 4, 2001, one day before the expiration of the one-year period for bringing an action to revoke the Debtors' discharge, the U.S. Trustee timely filed this adversary proceeding seeking a revocation of the Debtors' discharge, alleging, *inter alia,* that the Debtors had intentionally omitted substantial assets from their schedules.

### Conclusions of Law

I. *The Effect of the Compromise is Governed by State Contract Law.*

■ The limited question before the Court in this bifurcated trial is whether the release language as described above bars a proceeding to revoke the Debtors' discharge. An analysis of this question starts with the basic proposition that a settlement is a contract and is construed according to state law. *In re WorldCom,* 296 B.R. 115, 121 (Bankr.S.D.N.Y.2003). The Court must therefore look to Florida law to determine whether the Release entered into by the Trustee and the Debtors is enforceable against the U.S. Trustee. The Release contains the traditional language of a general release prohibiting any and all in personam actions against the Debtors.

■ Generally, Florida courts enforce general releases to further the policy of encouraging settlements. *Mazzoni Farms, Inc. v. DuPont De Nemours and Co.,* 761 So.2d 306, 314 (Fla.2000). "[W]here the language of [a] release is clear and unambiguous [a] court cannot entertain evidence contrary to its plain meaning." *Cerniglia v. Cerniglia,* 679 So.2d 1160, 1164 (Fla.1996). *See also Quarterman v. City of Jacksonville,* 347 So.2d 1036 (Fla. 1st DCA 1977) (no need

for parol evidence when the release is stated in clear and unambiguous terms). In this case, the Release clearly and unambiguously releases the Debtors from all in personam actions against them by the Trustee or any "party in interest." An action to revoke the Debtors' discharge is an in personam action. *Johnson v. Home State Bank (In re Johnson)*, 501 U.S. 78, 84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) ("a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem.*"). The U.S. Trustee is a party in interest. The release, therefore, binds the U.S. Trustee.

The Court's analysis, however, must go further. For the reasons discussed below, it is now clear that the order granting the Compromise Motion was improvidently entered. The order had the effect of releasing the Debtor from matters that were well beyond the scope of the Compromise Motion.

II. *The Compromise Motion Was Not Adequate Under the Justice Oaks Factors to Give Creditors Notice of the Extent of the Compromise.*

■ The proponent of a motion to compromise bears the "burden of proof and (has) the burden of persuasion to establish that the settlement is both reasonable and in the best interests of the estate...." *Shaia v. Three Rivers Woods, Inc. (In re Three Rivers Woods, Inc.)*, 2001 WL 720620, *6 (Bankr.E.D.Va. March 20, 2001). The bankruptcy court "must be apprised of all necessary facts for an intelligent, objective and educated evaluation." *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir.1980). *See also In re Medical Sterile Products*, 310 F.Supp. 262, 264 (D.Puerto Rico 1970)(motion for compromise must provide

"all the facts pertinent to a proposed compromise"). In evaluating the compromise the bankruptcy court evaluates the facts and circumstances as they apply to the compromise by considering four factors. *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir.1990) ("*Justice Oaks*"). The relevant factors are:

(a) The probability of success in the litigation;

(b) the difficulties, if any, to be encountered in the matter of collection;

(c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

(d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises

("*Justice Oaks* Factors"). *Id.*

■ In this case, the Compromise Motion appeared both straightforward and comprehensive as presented to the Court and all creditors and parties in interest. It settled with finality all questions as to property of the estate and brought into the estate substantial monies that would result in a significant and prompt distribution to creditors. Applying the *Justice Oaks* Factors, the settlement appeared to be in the best interests of the estate. The absence of any objection to the motion for compromise of controversy suggests that creditors and parties in interest agreed.

However, the allegations of the Debtors' misconduct that form the basis of the U.S. Trustee's complaint to revoke the Debtors' discharge, although apparently known to the Debtors and the Trustee at the time of filing of the Compromise Motion, were not referred to in any respect nor were the facts forming the basis for this discharge action described in any way in the Compromise Motion. Although it is apparent

from the evidence and testimony adduced at trial that these allegations may have provided a powerful impetus for the resolution that was reached to include the broad release language, that fact cannot conceivably be read in the Compromise Motion. Accordingly, creditors and parties in interest received inadequate notice of the circumstances surrounding the settlement reached between the Debtors and the Trustee and the consequences of giving the Debtors the Release provided for under the Compromise Motion.

Further, viewed in this light, there is no way that the Compromise Motion met the *Justice Oaks* standards with respect to settlement of any potential discharge action. In this respect, most importantly, it does not discuss the probability of success on the merits in an action seeking revocation of the Debtors' discharge. Nor does it lay out the factual basis for such an action.

III. *Settlements of Discharge Actions Are Subject to Heightened Scrutiny.*

Most importantly, based on the contents of the Compromise Motion, the Court and creditors were unaware that there were potential claims for revocation of discharge pursuant to section 727 that could be asserted against the Debtors. Had the Court been apprised of that fact, it would have been required to view the compromise with "heightened scrutiny." *Edge v. Marston (In re Marston)*, 141 B.R. 767, 768 (Bankr.M.D.Fla.1992).

 Compromises of section 727 actions present special policy considerations. The underlying purpose of section 727 "is to protect the integrity of [the] bankruptcy system by denying a discharge to [a] debtor who engages in certain specified objectionable conduct that is of a magnitude broader than injury to a single creditor." *Bankruptcy Receivables Management v. de Armond (In re de Armond)*, 240 B.R. 51, 55 (Bankr.C.D.Cal.1999). To that end, settlements of section 727 actions are subject to heightened skepticism and close scrutiny to ensure that the debtor is not in effect buying a discharge. *In re Traxler*, 277 B.R. 699, 705 (Bankr. E.D.Tex.2002). Besides vindicating public policy, a successful section 727 action benefits all creditors because it preserves their ability to pursue their claims against the debtor post-petition. *Jacobson v. Robert Speece Properties, Inc. (In re Speece)*, 159 B.R. 314, 319–20 (Bankr.E.D.Cal.1993). Accordingly, Rule 7041 of the Federal Rules of Bankruptcy Procedure limits the parties' ability to dismiss a section 727 action. The rule provides that a section 727 complaint may only be dismissed "on order of the court containing terms and conditions which the court deems proper."

So important is this policy that some courts have adopted a *per se* prohibition against the settlement of section 727 actions. *See, e.g., In re Levine*, 287 B.R. 683, 701 (Bankr.E.D.Mich.2002)(chapter 7 Trustee has no authority to settle section 727 actions in exchange for consideration); *Moister v. Vickers (In re Vickers)*, 176 B.R. 287, 290 (Bankr.N.D.Ga.1994)(it is against public policy to sell discharges); *In re Moore*, 50 B.R. 661, 664 (Bankr.E.D.Tenn.1985)(because discharge is a statutory right undergirded by public policy considerations, it is not a proper subject for negotiation and the exchange of a *quid pro quo* ).

Other courts have adopted a more moderate approach, evaluating settlements of section 727 actions to determine whether the terms are fair and equitable to all creditors of the estate. *See, e.g., State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1312–13 (2nd Cir. 1996)(court could condition dismissal of

section 727 action by compromise but could not do so long after judgment is entered); *Traxler,* 277 B.R. at 705 (disapproving settlement because it was not fair or equitable); *Hass v. Hass (In re Hass),* 273 B.R. 45, 58 (Bankr.S.D.N.Y.2002)(approving ex-wife's dismissal of section 727 action for judgment of non-dischargeability of debt where Trustee's section 727 action remained pending against debtor); *Absolute Financial Services, L.P. v. Kalantzis (In re Kalantzis),* 2000 WL 33679401, *4 (Bankr.D.N.H. August 21, 2000)(holding that settlement must be fair and equitable and allow U.S. Trustee or other creditor opportunity to substitute in a plaintiff in lawsuit); *de Armond,* 240 B.R. 51, 59 (approval of settlement of section 727 action pending full disclosure of consideration given or promised, including equal access to information regarding assets, liabilities, and claims against debtor provided to creditors with opportunity for creditors to object); *In re Bates,* 211 B.R. 338, 348 (Bankr.D.Minn.1997) (settlement of section 727 action approved as fair and equitable); *Tindall v. Mavrode (In re Mavrode),* 205 B.R. 716, 722 (Bankr.D.N.J.1997) (approving settlement of section 727 action where creditors have been given notice and an opportunity to intervene); *In re Wilson,* 196 B.R. 777, 780 (Bankr.N.D.Ohio 1996) (disapproving settlement of section 727 action because debtor's proposal to pay back much less than she allegedly misappropriated from the bankruptcy estate was not fair or equitable); *In re Taylor,* 190 B.R. 413, 418 (Bankr.D.Colo.1995)(disapproving settlement of section 727 action where no party was given opportunity to investigate claims or intervene in lawsuit); *Speece,* 159 B.R. at 323 (holding that settlement of section 727 action after judgment rendered denying discharge was not fair or equitable); *In re Margolin,* 135 B.R. 671, 674 (Bankr.D.Colo.1992) (settlement of section 727 action approved where opportunity to

intervene provided); *Russo v. Nicolosi (In re Nicolosi),* 86 B.R. 882, 887–88 (Bankr.W.D.La.1988)(disapproving settlement of section 727 action in return for judgment of nondischargeability of debt where district court had previously affirmed bankruptcy court's denial of debtor's discharge); *ITT Financial Services v. Corban (In re Corban),* 71 B.R. 327, 329 (Bankr.M.D.La.1987)(approving settlement of section 727 action upon disclosure of consideration and notice to Trustee).

■ Regardless of which approach is used, there is complete agreement that the court must pay particular and close attention to the facts and circumstances surrounding the settlement of a section 727 action to ensure that it promotes the policies that buttress the bankruptcy system and truly is in the best interests of the creditors.

The instant case is distinct from the cases cited above in one important respect. The cases cited above all involve section 727 actions that had already been filed. Here, the section 727 claims were inchoate claims at the time the Compromise Motion was before the Court. As a technical matter, Rule 7041 would not be applicable, and one could argue that the circumstances here are one step removed from the overriding policy considerations reflected in the above cases and thus undeserving of special scrutiny.

■ The Court concludes, however, that in all essential respects this case presents the same policy considerations as the cases cited above. Indeed, those considerations may even be heightened. The filing of a section 727 action serves to put the court, creditors, and parties in interest on notice of alleged wrongdoing by the debtor. *Mavrode,* 205 B.R. at 720. But settlements of such cases in the context of a potential but unfiled 727 action must also

be subject to the same level of scrutiny upon notice and adequate information disseminated to creditors and interested parties so they will have a meaningful notice and opportunity to be heard with respect to any such settlement.

Accordingly, there is no question that, had the Court known about the existence of potential 727 claims, it would not have entered the order granting the motion without requiring the Compromise Motion to be amended to meet the *Justice Oaks* standards.

## IV. *A Court May Correct Its Own Mistakes.*

■ A court may act sua sponte to vacate orders entered under a mistake of fact. *Cisneros v. U.S. (In re Cisneros),* 994 F.2d 1462, 1466 (9th Cir.1993) citing Rule 9024 of the Federal Rules of Bankruptcy Procedure, incorporating by reference Rule 60(b)(1) of the Federal Rules of Civil Procedure. In *In re Grossot,* 205 B.R. 341, 343 (Bankr.M.D.Fla.1997), the court relied upon Section 105 of the Bankruptcy Code and Rule 9024 of the Federal Rules of Bankruptcy Procedure to vacate its order approving a motion to compromise controversy entered in the mistaken belief that the Debtors had not sought to convert their case.[1] Likewise, the Court here entered its order granting the Compromise Motion without being informed that there were section 727 claims at issue in the Debtors' case that would be compromised by the broad language of the Release.

*Conclusion*

■ Adequate notice to parties in interest is a requirement central to the otherwise expedited administration of bankruptcy cases. The Compromise Motion in this case failed to meet the minimal standards for notice and hearing described in *Justice Oaks* by failing to apprise parties in interest of the extent of the potential claims that were being compromised under the broad language contained in the Release provided to the Debtors.

The need for notice to creditors of the extent of such a settlement is heightened by the public policy requiring that increased scrutiny be given to settlements that result in a debtor obtaining a release for a potential action to revoke the debtor's discharge. Particularly in such cases, parties must ensure that the detailed information necessary for parties in interest be contained in the motion so as to allow for close scrutiny of such agreements.

Faced with a situation where a motion to approve a compromise, which releases a debtor from a section 727 action without any meaningful notice (a violation of the requirement of *Justice Oaks I* ), a court must vacate any improvident approval of such a settlement. However, in this case, while the Court has determined it is appropriate to *sua sponte* vacate its order approving the compromise, it will nevertheless give the Trustee and the Debtors an opportunity to renew their settlement discussions. If a compromise is reached that specifically *and explicitly* includes a release of the section 727 actions, the par-

---

**1.** The Court notes there is a split of authority among the Circuits whether a court may grant Rule 60(b) relief *sua sponte.* The Sixth and Tenth Circuits prohibit such relief while the Second, Fourth, Fifth, and Ninth Circuits have allowed such *sua sponte* relief. *U.S. v. Pauley,* 321 F.3d 578, 581, fn. 1 (6th Cir.2003) (in footnote 1, the Sixth Circuit discussed the split among the Circuits). The Eleventh Circuit has yet to rule on this precise issue. However, in the alternative, this Court recognizes that the U.S. Trustee moved *ore tenus* to vacate the settlement at the hearing held on April 15, 2003. Transcript (Doc. No. 17) at 19, para. 12–20. Thus, there was a "motion" made before the Court.

ties may renew their motion setting forth a full recitation of the facts underlying the claims being released so that creditors will have a full opportunity to be heard with respect to the Court's approval of such a settlement.

Alternatively, if further discussions between the parties are not fruitful in concluding a comprehensive settlement of the Trustee's claims as well as the section 727 action, or if the Court after hearing any objections to a renewed settlement proposal does not approve the release of the 727 claims, then this adversary proceeding will be scheduled for trial on the merits of the U.S. Trustee's claims.

For these reasons, it is

ORDERED:

1. The order granting the Compromise Motion (Document No. 119 in main case) is vacated without prejudice. The Chapter 7 Trustee is granted leave to file an amended motion to compromise controversy seeking approval of any revised settlement, within 45 days of the date of this order.[2]

2. If the Chapter 7 Trustee files a motion to approve a revised settlement, the Court will schedule a hearing on notice to all creditors and parties in interest and will consider it *de novo*. If the Court grants the motion, the order will be *nunc pro tunc* to the date of the original order approving the Compromise Motion.

3. If the Chapter 7 Trustee does not file a motion to compromise controversy within the time set forth in this order, the Trustee shall within ten days thereafter return the monies paid by the Debtors pursuant to the order approving the Compromise Motion. The Court will thereaf-

ter schedule a further pretrial conference in this proceeding.

---

2. Because the order being vacated was entered in the Debtors' main chapter 7 case, the Clerk is directed to enter this order in the docket of the debtors' chapter 7 case, as well as in the docket of this adversary proceeding.