**In re Allen H. BATES, Debtor.**

**Bankruptcy No. BKY 4–95–4063.**

United States Bankruptcy Court,
D. Minnesota.

July 9, 1997.

William I. Kampf, Kampf & Associates, P.A., Minneapolis, MN, for Debtor.

Thomas F. Miller, Minneapolis, MN, trustee.

Sherri L. Feuer, Special Assistant U.S. Attorney, St. Paul, MN, for I.R.S.

## MEMORANDUM ORDER APPROVING SETTLEMENT

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the undersigned on the 30th day of April, 1997, on the motion by the Chapter 7 Trustee to approve a settlement pursuant: to Rule 9019 of the Federal Rules of Bankruptcy Procedure. Appearances were as noted on the record. The United States Trustee has objected to the proposed settlement on the grounds that approving the settlement would be contrary to public policy. After reading the files and hearing the arguments of counsel, the Court has determined that the settlement agreement is in the best interests of the estate and should be approved.

### FACTS AND PROCEDURAL HISTORY

The Debtor in this case, Allen H. Bates, is a professional actor who specializes in using his voice in radio and television advertising, industrial videos, slide films, and film narrations. On August 3, 1995, the Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. No unsecured priority claims have been filed against the Debtor's bankruptcy estate and the amount of general unsecured claims outstanding totals approximately $315,000.00. Of this amount, the Internal Revenue Service has filed a proof of claim for $290,813.74, making it the holder of approximately 92% of the general unsecured claims against the estate. According to the Debtor's schedules, at the time the Debtor filed his bankruptcy petition he had no substantial property in excess of the exemptions allowed by Minnesota law, and the case was thus treated as a "no-asset" case. On November 27, 1995, the Debtor received a discharge under § 727(a) of the Code. Subsequent to the entry of the Debtor's discharge, however, the Trustee discovered various unscheduled assets and avoidable transfers which the Trustee claims are property of the estate. As a result of this discovery, on August 2, 1996, the Trustee commenced an adversary proceeding seeking revocation of the Debtor's discharge pursuant to § 727(d)(1) and (2), and turnover of estate assets pursuant to § 542. In his adversary complaint, the Trustee makes the following allegations to support his claims:

1. The Debtor stated on his Schedule B (Personal Property) that he maintained four deposit accounts, one with a balance of "$50.00," and three with "nominal" balances. The Trustee alleges that, in fact, the Debtor maintained at least five accounts, with combined balances on the date of filing exceeding $10,000;

2. The Debtor also listed on his Schedule B an 11% ownership interest in a corporation known as "Griffins & Lions, Inc. (G & L) ." G & L is a Minnesota corporation formed by a group of actors, including the Debtor: for the purpose of accounting for the actors' income. Under this arrangement, the actors' salary is initially paid to G & L, which then performs wage withholding and makes contributions to a pension plan. G & L then pays the net salaries to the shareholders as its employees. The corporation also purchases equipment, including personal vehicles, for use by its shareholders.

On his Schedule B, the Debtor stated that his ownership share in G & L had a market

value of "$0.00," and further stated that the "Debtor's interest has no value." The Trustee alleges that, in fact, the Debtor's interest in this corporation had a market value of more than $10,000 on the date of filing. The Trustee also alleges that, at the time of the filing of the petition, the Debtor had a right to present and future payments from G & L which constitutes property of the estate and which the Debtor failed to report on his petition, schedules and statements filed in the case. Based on this, the Trustee alleges that the Debtor has continued, from the time of the commencement of the case to the present, to control, possess, and convert these cash payments to his own use and purpose, and has failed to tender the payments to the Trustee;

3. The Trustee alleges that, at the time of the commencement of the bankruptcy case, the Debtor owned substantial rights to receive "residual" income from business activities consummated before the commencement of the case. A "residual" fee is paid to an actor every time the actor's original production is played subsequent to it's original showing. The Trustee alleges that, at the time of the commencement of the case, the Debtor had the right to receive residual income in excess of $10,000 in amount from several previous productions. The Trustee alleges that this right to receive residual income constitutes property of the estate which the Debtor did not disclose on his petition, schedules and statements. Furthermore, the Trustee alleges, the Debtor has continued, from the time of the commencement of the case to the present, to control, possess, and convert these payments to his own uses and purposes, and has failed to tender the same to the Trustee;

4. On his Statement of Financial Affairs, the Debtor indicated that he had made no substantial gifts or transfers out of the ordinary course of business within the year prior to the commencement of the case. The Trustee alleges that, in fact, the Debtor transferred at least $8,820 in payment of his adult daughter's college tuition within the 30 days prior to the commencement of the case; [1]

5. Finally, on his Statement of Financial Affairs, the Debtor indicated that there had been no bookkeepers or accountants who had kept or supervised the books or financial records of the Debtor, or who had possession of the Debtor's books and records, at the time of the commencement of the case. The Trustee alleges that, in fact, accountant David M. Sennes, CPA, had full knowledge of the transactions and business affairs of the Debtor and of G & L for many years prior to and including the time of the filing of the petition. The Trustee alleges that the Debtor intentionally failed to disclose the existence and identity of Mr. Sennes in an attempt to prevent the Trustee from learning the true value of the Debtor's interest in G & L, and of the Debtor's other assets and financial affairs.

On February 19, 1997, the Debtor's filed an Amended Schedule B, in which the Debtor made the following changes:

1. The Debtor increased his valuation of various personal property assets;

2. The Debtor disclosed actual bank account balances on the petition date of about $3,800;

3. The Debtor disclosed two cameras worth $500;

4. The Debtor disclosed an ownership interest in three additional pension plans which the Debtor indicated were not property of the estate;

5. The Debtor disclosed ownership of one share of Lipservice, Inc., representing one-twelfth of the shares of its stock. The Debtor valued his interest at $298.25;

6. The Debtor disclosed the right to receive an expense reimbursement from G & L in the amount of $3,282.39;

7. The Debtor disclosed a "contingent right to 'residuals' from various performing contracts," with the current market value stated to be "unknown-significant"; and

8. The Debtor disclosed the right to receive a 1995 tax refund, subject to an IRS setoff.

---

1. This transfer has since been avoided by this Court.

Also on February 19, 1997, the Debtor filed an Amended Schedule C (Property Claimed as Exempt), in which the Debtor claimed the increased personal property valuations, the three additional pension plans, and the residual earnings as exempt under Minnesota law. Finally, the Debtor filed a Supplemental Statement of Financial Affairs, in which he disclosed the existence of the accountant David M. Sennes as a person knowledgeable of his financial affairs and in which he admits to holding various assets owned by G & L.

Based on these allegations, the Trustee asserts that he possesses the following claims against the Debtor: (1) claims against the Debtor under § 727(d)(1) and (2) for the revocation of the Debtor's discharge; (2) claims against the Debtor for the denial of the claimed residual contract income exemption because the Debtor intentionally concealed this asset from the bankruptcy estate and because residual contract income is not exempt under Minnesota law; (3) claims against the Debtor that the Debtor's interest in a G & L pension plan which he claimed as exempt on his original Schedule C constitutes property of the estate and is not exempt under Minnesota law; and (4) claims against the Debtor for turnover of any assets determined to be nonexempt property of the estate pursuant to § 542.

At the April 30, 1997 hearing, the Debtor's counsel indicated to the Court that the Debtor denies the substance of the Trustee's allegations, and that he would vigorously contest each and all of the Trustee's claims against him. The Debtor asserts that he has defenses to the revocation of discharge suit. Specifically, with respect to the residuals, he contends that he did not disclose them because he believed them contingent and wholly uncertain and that he believed them to be salary. He asserts that 75% of the residuals, in any event, are exempt under Minn.Stat. § 550.37, Subd. 13 (1996). Other assets, he asserts, were inadvertently overlooked or not even known to him at the time his petition was prepared. He vigorously asserts his "pure heart" and urges the Court. to consider all nondisclosures "innocent mistakes, made in complicated circumstances."

In order to respond to the Debtor's claim of exemption for the G & L pension plan benefits, the Trustee necessarily reviewed the ERISA qualification of such plan The Trustee has now taken the position that the plan is defectively organized and implemented and is not ERISA qualified. Based on this discovery, the Trustee has prepared additional pleadings which, if successful, could cause grave additional tax complications, not only for the Debtor but also for Debtor's fellow actors who are also shareholders of G & L. Apparently, it was this threat of expanded litigation and its possible horrendous additional problems which precipitated serious settlement discussions.

On April 10, 1997, the Debtor and the Trustee entered into a Settlement Agreement subject to approval by this Court. Under the terms of the proposed settlement, the Debtor promises to pay the bankruptcy estate the sum of $250,000. This sum would be paid to the estate over three years and would be secured by a second mortgage on the Debtor's homestead, which the Debtor has claimed as exempt. In exchange for this payment, the estate will release all claims against the Debtor for turnover of the Debtor's assets, for objections to claims of exemption, and will also dismiss with prejudice the pending complaint for revocation of discharge. The estate would further release any and all claims, known or unknown, against the Debtor, his wife, his daughter, and G & L and Lipservice. Finally, in the event that the Debtor defaults in payment, the Debtor agrees that his discharge would be revoked and a money judgment entered against him for the unpaid balance.

On April 30, 1997, the Trustee moved for this Court's approval of the Settlement Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. The Trustee's support for his own motion, however, was somewhat equivocal. His moving papers asserted that he had executed the Settlement Agreement in view of the substantial amount of money the Debtor was proposing to pay and his belief that "it is not within his discretion to reject an offer of this magnitude...." Should the court find that a settlement of this nature is not per se forbid-

den, the Trustee urged, however, that the settlement is definitely in the best interests of creditors and should be approved. The U.S. Trustee objected to the terms of the proposed settlement, arguing that the Trustee's settlement of a § 727 revocation of discharge suit in exchange for money is per se inappropriate because it would damage the integrity of the judicial process and thus be contrary to public policy. The IRS appeared at the hearing and was likewise opposed to the settlement, on public policy grounds, but in favor of the settlement, on economic grounds.

## ANALYSIS

■■■■ Rule 9019 of the Federal Rules of Bankruptcy Procedure vests the bankruptcy court with broad authority to approve or disapprove all compromises and settlements affecting the bankruptcy estate. The decision of whether to approve a proposed settlement is within the sound discretion of the bankruptcy court. *See Drexel Burnham Lambert, Inc. v. Flight Transp. Corp. (In re Flight Transp. Corp. Sec. Litig.)*, 730 F.2d 1128, 1135 (8th Cir.1984), *cert. denied. sub nom. Reavis & McGrath v. Antinore*, 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985). In exercising this discretion, the court must consider and weigh the following criteria:

> (1) The probability of success on the merits in the litigation;
>
> (2) The difficulties, if any, to be encountered in collection of any judgment that might be obtained;
>
> (3) The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it;
>
> (4) The paramount interests of creditors and the proper deference to their reasonable views in the premises; and
>
> (5) Whether the conclusion of the litigation promotes the integrity of the judicial system.

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968); *Flight Transp. Corp.*, 730 F.2d at 1135; *Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir.1929); *Iannacone v. Foothill*

*Cap. Corp. (In re Hancock–Nelson Mercantile Co., Inc.)*, 95 B.R. 982, 990 (Bankr. D.Minn.1989); *In re Hanson Indus., Inc.*, 88 B.R. 942, 946 (Bankr.D.Minn.1988); *Lindquist v. First Northtown Nat'l Bank (In re Lakeland Dev. Corp.)*, 48 B.R. 85, 89–90 (Bankr.D.Minn.1985). Finally, the court must also consider the principle that "the law favors compromise." *Lakeland*, 48 B.R. at 90 Indeed, in determining whether to approve a proposed settlement, "the court does not substitute its judgment for that of the trustee.... Instead, the court will at the hearing on the proposed settlement, "canvas" the issues and see if the settlement falls below the lowest point in the realm of reasonableness." *Hanson*, 88 B.R. at 946 (quoting *In re Bell & Beckwith*, 77 B.R. 606, 612 (Bankr.N.D.Ohio 1987)). After considering all the factors involved, the court should approve a proposed settlement only if it is "fair and equitable" and in the best interests of the estate. *TMT*, 390 U.S. at 424, 88 S.Ct. at 1163; *Hanson*, 88 B.R. at 946; *Lakeland*, 48 B.R. at 89.

### I. THE PROBABILITY OF SUCCESS ON THE MERITS

The first factor for consideration, the Trustee's probability of success on the merits, weighs neither in favor of denial. of the proposed settlement nor against it. As outlined above, the Trustee's claims against the Debtor fall into four categories: (1) the Trustee's claim for revocation of the Debtor's discharge; (2) the Trustee's objection to the claimed exemption of the Debtor's residual payments; (1) the Trustee's objection to the claimed exemption of the Griffins & Lions pension plan; and (4) the Trustee's claims against the Debtor for turnover of any assets determined to be nonexempt property of the estate pursuant to § 542. The Trustee has indicated that he believes his revocation of discharge case against the Debtor to be strong. Based on the volume of the Debtor's inaccuracies and omissions contained in the Trustee's allegations, it is tempting to conclude that it will be difficult for the Debtor to refute an inference of fraudulent intent. Fraudulent intent, however, is an element of the Trustee's revocation case, is often diffi-

cult to prove, and may not be assumed. Normally, a finding of fraudulent intent rests on the credibility of the Debtor's explanation proffered at trial. The Debtor has proferred a number of explanations for the inaccuracies contained in his Schedules. For example, on the question of whether the Debtor intentionally failed to disclose his interest in the residual contract income, it may not be so difficult for the Debtor to prevail; in essence, residuals could look (perhaps to the layperson especially) like future income rather than like accounts receivable. There is also quite a bit of credence in Debtor's argument that receipt of residual income is not guaranteed; residuals are paid only if and when the customer makes the decision to use Debtor's talents. Depending on the evidence produced at trial, it is entirely possible that the Debtor would prevail on the issue of intent. In addition, the Trustee's success on the questions of whether the residual income can qualify for exemption under Minnesota law, whether if exempt the Debtor has waived his right to the exemption, and whether the G & L pension qualifies as an ERISA-qualified plan is not certain. The Trustee admits that there is no Minnesota precedent on the issue of whether residuals paid to an independent contractor qualify for the 75% withholding provided by Minn.Stat. § 550.37, Subd. 13. Whether any pension plan qualifies under ERISA is an enormously complicated issue. Success on the liability aspects *and* the damages aspects of this case is uncertain. Debtor's positions are by no means frivolous, he has retained able counsel, and he apparently has the wherewithal to pursue his defenses through appeal.

The best that can be said on this element of the equation is that both sides have strong arguments on one or more issues of this multifaceted case, that litigation in such complex cases is never certain of outcome, and that either side could prevail in whole or in part.

II. The Difficulties, If Any, To Be Encountered In Collection

The second factor for consideration, the difficulties, if any, to be encountered in collection, weighs in favor of denial of the settle-ment. The Trustee's revocation of discharge suit, if successful, would not result in the entry of a monetary judgment against the Debtor. Thus, the potential difficulties in the matter of collection are only pertinent to the determination of whether to settle the Trustee's claims for denial of exemptions and the related claims for turnover. In this respect, the Trustee has indicated that he does not believe that there would be significant expense or risk associated with collecting nonexempt assets. The Trustee has stated that the residual income could easily be diverted to the Trustee from its various sources. Furthermore, if the Trustee were successful, judgment would be entered against the Debtor for the value of the nonexempt residuals received by him since the petition filing, and this judgment could be collected from residuals earned postpetition and from other assets, though reduced to 25% if he loses the exemption issue. The other nonexempt items would be subject to simple turnover and sale.

III. The Complexity Of The Litigation, And The Expense, Inconvenience And Delay Necessarily Attending It

Certain aspects of the third consideration, the complexity, expense, inconvenience and delay of the litigation, weigh in favor of denial of the settlement. According to the Trustee, the most expensive and complicated phase of the Trustee's case, the investigatory phase, is now completed. The Trustee has indicated that virtually all pretrial motions and other documents have been drafted. Furthermore, because the terms of the settlement provide for the Debtor's payment to the estate to be stretched over a period of three years, the adverse effect of the delay associated with full litigation of the Trustee's claims is minimized.

Importantly, however, the Trustee has indicated that full litigation of his claims against the Debtor would be "protracted," and that the administrative costs to the estate would increase substantially. In his, memorandum in support of the settlement, the Trustee states as follows:

The total claims against the estate, including as yet unallowed litigation costs, are on the order of $400,000. It is extremely unlikely that the estate could distribute this much, or even the proffered amount of $250,000, from non-exempt assets. This would be so even if the residuals were found to be non-exempt, and the Griffins & Lions pension plan were found to be property of the estate. Any residuals collected by the estate would be subject to state and federal income tax, in combined brackets of around forty percent, possibly higher. This tax would be an administrative expense of the estate. The pension plan account would, under the Trustee's argument, come into the estate tax free, but only after very substantial litigation costs, possibly equal to half or more of the Debtor's account of approximately $190,000.[2] *For all of these reasons, the amount to be paid under the Settlement Agreement is probably more than the post-tax, post-litigation-cost value of the nonexempt assets, even if the Trustee prevails on all issues.*

Trustee's Memorandum at 11–12 (emphasis added). In light of the high costs to the estate associated with continuing this litigation, the Court concludes that the third consideration weighs in favor of approval of the settlement.

## IV. THE PARAMOUNT INTERESTS OF CREDITORS

The fourth factor for consideration, the paramount interests of the creditors of the estate, weighs in favor of approval of the settlement. The IRS, which holds approximately 92% of the general unsecured claims against the estate, was the only creditor to appear at the April 30, 1997 hearing. Although the IRS somewhat reluctantly took the position that the settlement of all § 727 cases should be disapproved on a public policy basis,[3] the IRS stated that it did not oppose the proposed settlement from a monetary standpoint and that, in fact, the pro-

posed settlement was "a good settlement for the IRS." Indeed, after deducting for administrative expenses thus far incurred by the estate,[4] the IRS stands to recover approximately $184,000 of the funds received under the proposed settlement, or approximately 63% of its unsecured claim. Although the unsecured creditors have the potential to receive a higher payment if the Trustee's revocation of discharge suit were sued out, particularly in light of the special rights of the IRS to attach the Debtor's homestead and pension equity, the Trustee has indicated that full litigation of his claims against the Debtor would be "protracted," and the Trustee's success on the merits is not guaranteed. Therefore, in light of the likely costs to the estate resulting from protracted litigation and the expressed support from the estate's major unsecured creditor, this Court cannot say that a settlement resulting in a 63% payout to general unsecured creditors is beyond the realm of reasonableness for the creditors of the estate.

## V. THE INTEGRITY OF THE JUDICIAL SYSTEM

The final factor for consideration, the effect of the proposed settlement on the integrity of the judicial system, must be considered in the context of the proposed settlement of the Trustee's § 727 revocation of discharge complaint. The U.S. Trustee argues in this case that a settlement of a § 727 revocation of discharge case in exchange for monetary payments by the debtor should never be approved as a matter of law, as this would constitute a "buying of the discharge" and would be contrary to public policy. In support of this proposition, the U.S. Trustee cites several cases holding that § 727, as a congressional codification of the conditions that an individual debtor must meet to obtain a bankruptcy discharge, is not a "proper subject for contractual negotiation." *See In re Levy,* 127 F.2d 62, 63

---

2. The Debtor asserts this figure is actually much less than $190,000.

3. All of these statements were even more equivocal, as counsel for the IRS advised the court that the IRS was still "investigating" the situation.

4. At the April 30, 1997 hearing, counsel for the Trustee indicated that administrative expenses incurred by the estate to date totaled approximately $50,000.

(3d Cir.1942); *In re Wilson*, 196 B.R. 777, 778–79 (Bankr.N.D.Ohio 1996); *Moister v. Vickers (In re Vickers)*, 176 B.R. 287, 290 (Bankr.N.D.Ga.1994); *In re Moore*, 50 B.R. 661, 664 (Bankr.E.D.Tenn.1985). This line of cases espouses the rule that it is improper for a trustee or a creditor to seek funds from a debtor as a price for giving up on a discharge complaint. *See, e.g., Vickers*, 176 B.R. at 290. The rationale behind this viewpoint is that a rule allowing § 727 cases to be settled would enable a dishonest debtor who has engaged in fraudulent conduct, by simply paying a settlement price, to receive a discharge in contravention of the explicit prohibitions contained in § 727 and the fundamental bankruptcy policy that discharge be limited to "honest but unfortunate" debtors. For this reason, these cases have held that the grant or denial of the discharge should be governed by the debtor's conduct and the debtor's conduct alone. In *Vickers*, the court stated:

> Either the discharges ought to be granted or they ought to be denied. Nothing in the Bankruptcy Code authorizes a trustee to seek funds from a debtor or to release a non-debtor entity as a price for giving up on a discharge complaint. Discharges are not property of the estate and are not for sale It is against public policy to sell discharges.

176 B.R. at 290 (citing *Moore*, 50 B.R. at 664). Finally, it has been suggested that, pursuant to 18 U.S.C. § 152 (1994), "it may be improper *or even illegal* for a debtor to offer or for a *creditor* to receive any consideration for the dismissal of a complaint objecting to discharge." *In re Taylor*, 190 B.R. 413, 416 n. 3 (Bankr.D.Colo.1995) (emphasis added). *See Wilson*, 196 B.R. at 779.

A second line of cases, however, and the majority view, holds that a *per se* rule against settling § 727 complaints is inappropriate. *See Tindall v. Mavrode (In re Mavrode)*, 205 B.R. 716, 720–21 (Bankr.D.N.J. 1997); *Taylor*, 190 B.R. at 417–18; *Jacobson v. Robert Speece Properties, Inc. (In re Speece)*, 159 B.R. 314, 317 (Bankr.E.D.Cal. 1993); *In re Margolin*, 135 B.R. 671, 673 (Bankr.D.Colo.1992); *Russo v. Nicolosi (In re Nicolosi)*, 86 B.R. 882, 889 n. 4 (Bankr. W.D.La.1988); *ITT Fin. Servs. v. Corban (In re Corban)*, 71 B.R. 327, 329 (Bankr.M.D.La. 1987). Although these cases recognize the public policy concerns surrounding the settlement of § 727 actions, they hold that the settlement of a § 727 complaint is appropriate in those situations where the terms of the proposed settlement are "fair and equitable" and in the best interests of the estate. *See, e.g., Mavrode*, 205 B.R. at 720; *Taylor*, 190 B.R. at 416–17; *Speece*, 159 B.R. at 317.

■ This Court holds that it is *per se* inappropriate to approve a proposed settlement of a § 727 proceeding where the consideration offered in exchange for the dismissal of the plaintiff's complaint will inure for the benefit of a private creditor rather than for the benefit of the bankruptcy estate as a whole. The revocation or denial of discharge is a question of public policy that benefits all of the creditors of the bankruptcy estate. A private creditor who commences a § 727 proceeding on behalf of the estate assumes a duty to act in the best interests of the general creditor body. *Bank One v. Smith (In re Smith)*, 207 B.R. 177, 178 (Bankr.N.D.Ind.1997); *Hage v. Joseph (In re Joseph)*, 121 B.R. 679, 682 (Bankr.N.D.N.Y. 1990); *Peoples State Bank v. Drenckhahn (In re Drenckhahn)*, 77 B.R. 697, 701 (Bankr. D.Minn.1987) ("A private creditor who commences a § 727 proceeding takes on some of the attributes of a trustee, advancing the interests of all of a debtor's creditors."). Federal Rule of Bankruptcy Procedure 7041 recognizes this duty to the bankruptcy estate by providing that a complaint objecting to the debtor's discharge may not be voluntarily dismissed by the plaintiff unless notice has been given "to the trustee, the United States trustee, and such other persons as the court may direct," and then "only on order of the court containing terms and conditions which the court deems proper." FED. R. BANKR. P. 7041. Rule 7041 thus safeguards the interests of the bankruptcy estate by affording the trustee and other parties in interest the opportunity to object to dismissal of the complaint where such dismissal is not in the best interests of the estate. *See Drenckhahn*, 77 B.R. at 701. Furthermore, the Advisory Committee Note to Rule 7041 recognizes the

concern that the dismissal of a § 727 complaint by a private creditor in exchange for a private benefit given to that creditor would create an impermissible conflict of interest. The Advisory Committee Note provides:

> Dismissal of a complaint objecting to discharge raises special concerns because the plaintiff may have been induced to dismiss by an advantage given or promised by the debtor or someone acting in his interest. Some courts by local rule or order have required the debtor and his attorney or the plaintiff to file an affidavit that nothing has been promised to the plaintiff in consideration of the withdrawal of the objection. By specifically authorizing the court to impose conditions in the order of dismissal this rule permits the continuation of this salutary practice.

FED. R. BANKR. P. 7041 Advisory Committee Note. As this Advisory Committee Note makes clear, a dismissal of a § 727 complaint in return for the provision of a private benefit to the plaintiff would violate the plaintiff's fiduciary duty to the bankruptcy estate. "Section 727(a) is directed toward protecting the integrity of the bankruptcy system by denying discharge to debtors who engaged in objectionable conduct that is of a magnitude and effect broader and more pervasive than a fraud on, or injury to, a single creditor." *Austin Farm Center, Inc, v. Harrison (In re Harrison)*, 71 B.R. 457, 459 (Bankr.D.Minn. 1987). Therefore, once a creditor undertakes to advance the interests of the bankruptcy estate by filing a § 727 complaint, "[the creditor] may not abdicate that responsibility or use that position to its own advantage by settling the litigation on terms which will allow it to receive a private benefit solely for itself." *Smith*, 207 at 178. *See Taylor*, 190 B.R. at 416; *Joseph*, 121 B.R. at 682. *But see Mavrode*, 205 B.R. at 720; *Margolin*, 135 B.R. at 673 Indeed, Local Rule 7041-1 reinforces this conclusion by requiring the plaintiff to file an affidavit stating that nothing has been received in consideration of the dismissal of a § 727 case:

> A complaint objecting to discharge or seeking revocation of discharge, other than one brought by a trustee or the United States Trustee, shall not be dismissed at the plaintiff's instance except by order of the court after hearing on motion made in the adversary proceeding. The plaintiff shall serve the motion on all creditors and other parties in interest. *The plaintiff also shall file an affidavit stating that nothing has been received by or promised to the plaintiff in consideration of the request for dismissal.*

LOCAL R. BANKR. P. 7041-1 (D.Minn.) (emphasis added) Accordingly, this Court concludes that the dismissal of a § 727 proceeding in return for a private benefit to the plaintiff necessarily violates the plaintiff's duty to act in the best interests of the bankruptcy estate and compromises the integrity of the bankruptcy process. As a result, the settlement of § 727 cases under such circumstances is *per se* not allowed.

 In contrast to the situation described above, the proposed settlement currently before the Court stands on vastly different footing. In this case, the dismissal of the § 727 proceeding is proposed *by the Trustee* in exchange for payments by the debtor *for the benefit of the entire bankruptcy estate.* Under these circumstances, the debtor's payments to the Trustee benefit the bankruptcy estate as a whole, and the conflict of interest concerns addressed by Rule 7041 do not exist. Local Rule 7041-1 expressly recognizes this distinction by providing that "[a] complaint objecting to discharge or seeking revocation of discharge, *other than one brought by a trustee or the United States Trustee*, shall not be dismissed at the plaintiff's instance except by order of the court after hearing on motion made in the adversary proceeding." LOCAL R. BANKR. P. 7041-1 (D.Minn.) (emphasis added).

Furthermore, to the extent that the *Vickers* and *Moore* cases hold that the *per se* rule against settlement of § 727 cases should be extended to cases brought by the trustee because such a settlement would constitute a "buying of the discharge," this Court disagrees. A debtor cannot be guilty of "buying the discharge" unless he is not entitled to the discharge in the first place. In this case, the Trustee's allegations of Debtor misconduct have not yet been tried and the Debtor's entitlement to a discharge is as likely as it is

not. ·Under these circumstances, ·where the debtor's fraudulent misconduct has not been judicially determined, the Court holds that approval of the proposed settlement does not constitute a "buying of the discharge" and does not compromise the integrity of the judicial system. Instead, the proposed settlement represents an attempt by the Trustee to act in the best interests of the estate by limiting the estate's exposure to the risks and expenses of trial in the face of an uncertain outcome. In light of the public policy concerns necessarily implicated by § 727 proceedings, settlements of this type are to be viewed with skepticism and are subject to especially close scrutiny by the bankruptcy court. Nevertheless, a *per se* rule against settlement in all cases is inappropriate, as such a rule would wholly deny the benefits of compromise in cases where settlement is in the best interests of the estate.

## CONCLUSION

After carefully considering and weighing the various factors, the Court has determined that the proposed settlement is fair and equitable and in the best interests of the estate. The amount to be paid to the estate is reasonable in relation to the Trustee's probability of success on the merits of his claims and in relation to the high costs to the estate associated with full litigation. In addition to the Trustee's claim for revocation of the Debtor's discharge, full litigation in this case also involves complex and uncertain issues of state law exemptions and ERISA qualification. Therefore, although proposed settlements of § 727 claims are to be viewed with skepticism, this case involves many other complicated issues the settlement of which will greatly benefit the estate. Finally, in deciding whether to approve a proposed settlement under Rule 9019, the Court is cognizant of the "paramount" interest of the creditors and that proper deference must be given to their reasonable views in the premises. In light of the other considerations in this case, this Court is unwilling to substitute its judgment for that expressed by the major unsecured creditor of the estate in favor of the proposed settlement terms. Thus, after considering all the relevant factors in this case,

the Court has determined that the settlement in this case should be approved.

ACCORDINGLY, IT IS HEREBY ORDERED THAT the Trustee's motion to approve the settlement is GRANTED.

SO ORDERED.