**In re Reynold M. DE ARMOND & Laura D. de Armond, Debtors.**

**Bankruptcy Receivables Management, Plaintiff,**

**v.**

**Reynold M. de Armond & Laura D. de Armond, Defendants.**

Bankruptcy No. LA 98–40113–SB.
Adversary No. LA 98–03021–SB.

United States Bankruptcy Court,
C.D. California,
Los Angeles Division.

Sept. 30, 1999.

---

Richard W. Snyder, Law Office of Richard W. Snyder, Tustin, CA, for Bankruptcy Receivables Management.

Levi Reuben Uku, Law Offices of Levi Reuben Uku, Los Angeles, CA, for debtors.

## OPINION ON MOTION TO APPROVE COMPROMISE AND TO DISMISS ADVERSARY PROCEEDING

SAMUEL J. BUFFORD, Bankruptcy Judge.

### I. INTRODUCTION

Plaintiff Bankruptcy Receivables Management (BRM) has made claims in this adversary proceeding against the debtors Reynold and Laura de Armond under Bankruptcy Code §§ 727 (denial of discharge) and 523 (exceptions to discharge).[1] BRM now proposes (after insufficient notice to creditors) to abandon its § 727 claims and to compromise its § 523 claim for approximately 50% of the original demand.

The court holds that the simultaneous settlement of a § 523 claim and dismissal of a § 727 claim constitutes a tainted compromise that Bankruptcy Rule 7041 prohibits. In filing a § 727 claim a plaintiff takes on a fiduciary duty to the creditor body. A plaintiff violates this fiduciary duty when it appropriates for itself the settlement of such litigation.

The court finds that these factors do not prohibit the approval of such a settlement. However, the plaintiff's fiduciary duties require the plaintiff to turn over the settlement proceeds to the chapter 7 trustee for distribution among the creditors according to the priorities established by § 726. This remedy removes the taint from the compromise and satisfies the plaintiff's fiduciary duties to the creditors on the § 727 claims.

### II. FACTS

BRM alleges[2] that the de Armonds[3] purchased jewelry and loose gems for $16,887 from BRM's assignor. BRM further alleges that the purchases were charged to an account for which there was a security agreement, and that the current unpaid balance on the account is $15,891.16.

The debtors' Statement of Financial Affairs states that, in the 90 days preceding

---

1. Unless otherwise specified, all chapter, § and rule references in this opinion are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 (West 1999) and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

2. Because this adversary proceeding has not been litigated, the court has no evidence of the applicable facts beyond the complaint, the answer and limited information from a Rule 2004 examination.

3. The complaint indiscriminately lumps the two debtors together in its allegations. It makes no distinction whatever as to who made the purchases at issue, who made the alleged transfers, or who gave what testimony at the meeting of creditors or the Rule 2004 examination.

their bankruptcy filing, the debtors made no payment on loans or other debts exceeding $600 to any creditors. However, according to the complaint, the debtors testified at the meeting of creditors that they sold the jewelry and gems at issue within one month before filing their bankruptcy petition. Further, the debtors disclosed at a Rule 2004 examination that the sale price was $12,000 and that they used $10,500 of the proceeds to "pay loans."

In its complaint, BRM alleges that the debtors have violated § 727 in two respects. First, BRM alleges that the debtors' failure to disclose the sale and subsequent loan payments constituted a false oath under § 727(a)(4)(A).[4] Second, BRM alleges that the debt is nondischargeable under § 727(a)(2) because the debtors concealed the sale with the intent to deprive BRM of "its" property.[5] Finally, BRM alleges that the debt is nondischargeable under § 523(a)(6) because it constitutes a conversion of "its" assets.

The settlement provides for the payment of $8,000 to BRM in installments of $190 per month for three and a half years. BRM has submitted its counsel's declaration stating that the plaintiff filed the § 727 claims in good faith, but that it is no longer in BRM's best interest to pursue the claims because of its pending § 523 settlement.[6]

### III. ANALYSIS

### A. Standards for Evaluating Compromise

 A proposed compromise may be approved only if it is "fair and equitable."

*Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988); *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380–81 (9th Cir.1986); *cf. Protective Comm. v. Anderson*, 390 U.S. 414, 424–25, 88 S.Ct. 1157, 1163–64, 20 L.Ed.2d 1 (1968). Under this standard the court considers (1) the probability of success in the litigation; (2) the collectability of a resulting judgment; (3) the complexity, expense, inconvenience, and delay attendant to continued litigation; and (4) the interests of creditors. The interests of creditors is the most important factor, and the only material issue in this case.

### B. The Proposed Compromise

### 1. Comparison of §§ 727 and 523

Frequently a creditor in a consumer bankruptcy case files an adversary proceeding against a debtor that includes two kinds of claims: (1) a claim for the complete denial of a discharge under § 727 and (2) a claim for a determination under § 523 that a debt specifically owing to the plaintiff is excepted from the bankruptcy discharge.[7]

 Section 523(a) exempts from the bankruptcy discharge certain kinds of debts owed to specific creditors. A creditor who files a complaint for the nondischargeability of a claim under § 523 is free to settle the dispute with the debtor on any mutually agreeable terms, subject to

---

4. Plaintiff also alleges that the debtors made a false oath when they testified at the meeting of creditors that they had not transferred any property in the year preceding the bankruptcy filing, but later corrected their testimony to disclose the $10,500 in payments.

5. BRM inaccurately complains that the debtors have taken improper action with respect to "its" property. As a secured creditor, BRM has no ownership interest in the property at issue. The property belongs to the debtors, not to the secured creditor.

6. Indeed, BRM claims that it now has a conflict of interest in pursuing the § 727 claims on behalf of all creditors. However, this conflict of interest (if it exists) does not arise from the settlement. It arose when BRM filed its complaint with claims under both §§ 727 and 523.

7. Occasionally a creditor will file two separate adversary proceedings, one under § 727 and one under § 523. Nonetheless, the analysis is the same as where the two kinds of claims are joined in the same complaint.

court approval. In considering whether to approve such a settlement, the court usually gives no weight to the interests of other creditors.

■ While § 523 bars the discharge of specific debts, § 727 is a blanket prohibition against a debtor's discharge, that protects the rights of all creditors of the debtor at issue. *See State Bank v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1309 (2d Cir.1996). The underlying purpose of § 727 is to protect the integrity of the bankruptcy system by denying a bankruptcy discharge to a debtor who engages in certain specified objectionable conduct that is of a magnitude broader than injury to a single creditor. *See In re Taylor*, 190 B.R. 413 at 416 (Bankr.D.Colo.1995). The denial of a discharge under § 727 benefits all the creditors of the bankruptcy estate equally.

The tension between these two kinds of claims, and the duties of the plaintiff arising from the filing of a § 727 claim are particularly important when the plaintiff attempts to settle the § 523 claim and dismiss the § 727 claim. The case at bar exemplifies the typical scenario, where the plaintiff attempts to feather its own nest by settling the § 523 claim and abandoning the § 727 claim. The fiduciary duties arising from the § 723 claims cannot be shed so easily.

■ The Bankruptcy Code favors the discharge of honest debtors: section 727 is generally construed strictly against a creditor and liberally in favor of a debtor. *See, e.g., Chalasani*, 92 F.3d at 1310; *Siegel v. Weldon (In re Weldon)*, 184 B.R. 710, 712 (Bankr.D.S.C.1995); *Sacks v. Reader (In re Reader)*, 183 B.R. 630, 634 (Bankr.D.Idaho 1995). The denial of a discharge is an extreme remedy, and should be invoked only for those acts of misconduct that most threaten the integrity of the courts and the bankruptcy system. *See, e.g., Skaneateles v. Scott (In re Scott)*, 233 B.R. 32, 45 (Bankr.N.D.N.Y. 1998).

## 2. Three Approaches to Settling §§ 727 and 523 Claims

There are three different approaches to the settling of adversary proceedings asserting both § 727 and § 523 claims. The first approach is that it is never appropriate for a court to approve a settlement of an objection to a debtor's discharge. *In re Moore*, 50 B.R. 661 (Bankr.E.D.Tenn. 1985), for example, involved three objections to discharge filed by the trustee and the FDIC against a former director of a failed bank. The FDIC had previously brought litigation against the debtor in the district court. The trustee and the FDIC proposed to settle all of these claims in exchange for (a) the payment into the estate of $1.3 million by the debtor's wife, (b) the debtor's stipulation to the entry of a dischargeable judgment for $40 million in the district court case, and (c) the debtor's agreement to make a policy limits demand to the insurance carrier of the directors' and officers' insurance.

At the hearing on the compromise, the trustee referred to the deal as the debtor "buying his discharge." *Id.* at 664. The court disapproved the settlement, and stated:

[A] discharge in bankruptcy is not an appropriate element of a quid pro quo. Tying withdrawal of objections to discharge to settlement of other actions is contrary to public policy. Under no circumstances, not even where the intent is innocent, may a debtor purchase a repose from objections to discharge. A discharge in bankruptcy depends on the debtor's conduct; it is not an object of bargain.

50 B.R. at 664.

The court used similar language in *In re Vickers*, 176 B.R. 287 (Bankr.N.D.Ga. 1994), to disapprove a $24,000 settlement of a § 727 claim by the trustee against the debtor, where the trustee also proposed to release potential fraudulent transfer claims against the debtor. The court stated:

[D]ischarges ought to be granted or they ought to be denied. Nothing in the Bankruptcy Code authorizes a trustee to seek funds from a debtor or to release a nondebtor entity as a price for giving up on a discharge complaint. Discharges are not property of the estate and are not for sale. It is against public policy to sell discharges.... Selling discharges would be a disease that would attack the heart of the bankruptcy process, its integrity.

*Id.* at 290. The Collier treatise is in accord. It states:

Complaints objecting to discharge are treated differently in bankruptcy cases from other types of adversary proceedings.... It is improper for a debtor to offer or for a creditor to receive any consideration for the doing or forbearance of any act.

10 LAWRENCE P. KING ET AL., COLLIER ON BANKRUPTCY ¶ 7041–3 (15th ed. rev.1999).

*Vickers* did not involve the exchange of a dismissal of a § 727 claim for the settlement of a § 523 claim. Indeed, the court specifically stated that the rule may well be different in such a context. *Id. Moore* involved a debt that was probably dischargeable in 1985, but which likely is now nondischargeable under § 523(a)(11) or (12) (added to the Bankruptcy Code in 1990). Nonetheless, the language in these opinions indicates that a § 727 claim should never be dismissed in exchange for the receipt of consideration from the debtor.

A second and quite different approach to the settlement of claims under §§ 727 and 523 is found in *In re Margolin,* 135 B.R. 671, 673 (Bankr.D.Colo.1992), where the court approved the dismissal of a § 727 claim and the payment of $25,000 on the § 523 claim exclusively to the plaintiff creditor, after the trustee and creditor body had been properly noticed and had not objected. Apparently no other reported decision has agreed with *Margolin.*

A third line of cases, the majority view, hold that any settlement of a § 727 claim is limited to those circumstances where the terms of the settlement are fair and equitable and in the best interests of the estate. *See, e.g., Tindall v. Mavrode (In re Mavrode),* 205 B.R. 716, 720 (Bankr.D.N.J. 1997); *In re Taylor,* 190 B.R. 413, 416–17 (Bankr.D.Colo.1995); *Jacobson v. Robert Speece Properties, Inc. (In re Speece),* 159 B.R. 314, 317 (Bankr.E.D.Cal.1993). Under this line of cases the court must examine whether the terms of the settlement are fair and equitable and in the best interests of the estate. In addition, the court may impose such terms and conditions on the settlement as the court deems proper.

The court finds the third line of cases the most persuasive. Especially instructive in the third line of cases is *In re Bates,* 211 B.R. 338 (Bankr.D.Minn.1997), where the court found it per se inappropriate to permit a § 727 settlement to go to a private creditor rather than to the bankruptcy estate. *Id.* at 346. The court stated:

[O]nce a creditor undertakes to advance the interests of the bankruptcy estate by filing a § 727 complaint, the creditor may not abdicate that responsibility or use that position to its own advantage by settling the litigation on terms which will allow it to receive a private benefit solely for itself.

*Id.,* at 347 (citations omitted); *Hage v. Joseph (In re Joseph),* 121 B.R. 679, 682 (Bankr.N.D.N.Y.1990).

### C. Plaintiff's Fiduciary Duties Under § 727

The court in *Bates* found that such a settlement violated the plaintiff's fiduciary duties to act in the best interests of the bankruptcy estate and compromised the integrity of the bankruptcy process. 211

B.R. at 347. This rationale merits further explanation.

If a § 727 adversary proceeding is successful, it provides a benefit to all creditors in the case, because the debtor's discharge is denied in full. In consequence, a creditor who commences an adversary proceeding under § 727 becomes, in that respect, a fiduciary on behalf of all creditors. *State Bank v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir.1996); *Bates*, 211 B.R. at 346; *Joseph*, 121 B.R. at 682; *Peoples State Bank v. Drenckhahn (In re Drenckhahn)*, 77 B.R. 697, 701 (Bankr.D.Minn.1987).[8] The dismissal of such a complaint necessarily affects all creditors of the debtor.

A creditor who joins a § 727 claim with a § 523 claim wears two hats: a fiduciary hat for the § 727 claim, which is brought on behalf of all creditors, and an individual hat for the § 523 claim. In settling the litigation, the creditor may not disregard the fiduciary hat.

The responsibilities of a fiduciary are set forth in the seminal case, *Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545 (1928), where Chief Judge Cardozo wrote for the court:

> Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A [fiduciary][9] is held to something stricter than the morals of the market place. *Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.* As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the disintegrating erosion of particular exceptions. Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd.

*Id.* at 464, 164 N.E. 545 (emphasis added; citation omitted); *accord, Brown v. Halbert*, 271 Cal.App.2d 252, 76 Cal.Rptr. 781, 789 (1969) (finding that majority shareholder who was also president, chairman of the board and manager of a bank owed a fiduciary duty that required him to share with the minority shareholders his control premium for his sale of his stock).

*Meinhard* involved a joint venture to lease and reconstruct a commercial building in New York City. At the end of the 20–year lease, the owner approached Salmon, the manager of the joint venture, with a proposal to expand greatly the scope of the business. Salmon accepted, and Meinhard sued for his share of the deal. The court held that Meinhard was entitled to his proportionate share, because of the fiduciary duties that Salmon owed him as a joint venturer. 249 N.Y. at 462, 164 N.E. at 549.

The governing principle is simple where a party has fiduciary duties that conflict with the party's own interests. Fiduciary duties trump personal interests. Where a party's fiduciary duties come into conflict with the party's own interests, the fiduciary duties take priority. *See Bank One, Crawfordsville, NA v. Smith (In re Smith)*, 207 B.R. 177 (Bankr.N.D.Ind. 1997); *In re Taylor*, 190 B.R. 413, 416 (Bankr.D.Colo.1995).

---

8. The District of Minnesota, where *Bates* and *Drenckhahn* arose, has a local rule prohibiting the dismissal of a § 727 claim unless the plaintiff has filed an affidavit "stating that nothing has been received by or promised to the plaintiff in consideration of the request for dismissal." *Drenckhahn*, at 701 n. 2. *See also* FED.R.BANKR P. 7041 Advisory Committee Notes (approving such a local rule and calling it a "salutary practice").

9. In the *Meinhard* opinion Judge Cardozo uses the terms "fiduciary" and "trustee" interchangeably. However, the relationship there at issue (between joint venturers) is now commonly referred to as a fiduciary relationship.

■ In this case, the plaintiff became a fiduciary to the other creditors when it filed its § 727 complaint. Having assumed fiduciary duties to those creditors, the plaintiff may not now dismiss the § 727 claim in exchange for a settlement of the § 523 claim if the settlement will benefit solely the plaintiff.

### D. Consideration for Dismissal of § 727 Claim

■ Plaintiff tries to evade the foregoing case law by allocating none of the settlement payment to the § 727 claims. Plaintiff thus contends that it has given no consideration for the dismissal of the § 727 claims.

The court finds otherwise. Plaintiff cannot doff its fiduciary hat so easily. So long as the § 727 claim is pending, the fiduciary hat covers the private hat, and the settlement belongs to all creditors.

Under the facts of this case, the question of whether the debtor has given consideration for the dismissal of the § 727 claims is not a question of fact, but a question of the characterization of the facts. The court must look at the entire transaction to determine whether consideration has been given for the dismissal of the § 727 claim. The transaction in this case has three salient features. First, the complaint contains claims under both §§ 727 and 523. Second, the § 727 claims are being dismissed in the settlement. Third, the plaintiff is to receive $8,000 from the debtor in consequence of this settlement.

To determine what consideration is being given and received, the court must examine what each side is exchanging in this transaction. The debtor is giving and the plaintiff is receiving $8,000. The plaintiff is giving and the debtor is receiving a dismissal of the complaint, including both the § 727 claims and the § 523 claim. This is the exchange.

Thus the court must conclude that the $8,000 payment is in part in exchange for the dismissal of the § 727 claims. The court must disregard the claims by the parties to the contrary.

Traditionally courts have found that such a transaction is a "tainted compromise" that must be disapproved. *See, e.g., Hage v. Joseph (In re Joseph),* 121 B.R. 679, 682 (Bankr.N.D.N.Y.1990) (authorizing substitute creditor to pursue § 727 action after original plaintiff settled § 523 claim and abandoned § 727 claim). The parties could avoid this result only by excluding the § 727 dismissal from the transaction.

### E. Disposition of Settlement Funds

■ This court does not take the view that a creditor may never settle a § 727 claim.[10] However, the fiduciary duties that a creditor assumes in making a § 727 claim must be reflected in the form of the settlement. The settlement of such a claim belongs to all creditors.

■ *Meinhard v. Salmon,* 249 N.Y. 458, 164 N.E. 545 (1928), gives us guidance on how to resolve this issue. As in *Meinhard,* the discharge of plaintiff's fiduciaries in this case requires that the settlement be shared with the parties to whom the fiduciary duties are owed. Thus the settlement must be shared with the other creditors in this case.

Rule 7041 provides authority for this disposition. It provides that a § 727 complaint may be dismissed on the plaintiff's request "only on order of the court containing terms and conditions which the court deems proper." *See also State Bank v. Chalasani (In re Chalasani),* 92 F.3d 1300, 1310 (2d Cir.1996); *Tindall v. Mavrode (In re Mavrode),* 205 B.R. 716, 720 (Bankr.D.N.J.1997). This rule permits the

---

**10.** Some courts have even suggested that 18 U.S.C. § 152 criminalizes the receipt of any consideration for the dismissal of a § 727 claim. *See* 18 U.S.C. § 152(6) (West 1999); *see also In re Taylor,* 190 B.R. 413, 416 n. 3 (Bankr.D.Colo.1995); *accord,* 10 Lawrence P. King et al., Collier on Bankruptcy ¶ 7041–3 (15th ed. rev.1999).

court to tailor its order of dismissal to ensure that the dismissal is not obtained improperly. *Chalasani*, 92 F.3d at 1310. As the court stated in *Bank One, Crawfordsville, N.A. v. Smith (In re Smith)*, 207 B.R. 177 (Bankr.N.D.Ind.1997):

> Some things are black and white and this is one of them. If the successful prosecution of a proceeding will benefit the entire creditor body, that action may not be settled in return for a private benefit. Unless the same parties that would benefit from the successful prosecution of a particular action also receive the benefits of its settlement, the settlement is improper. No amount of notice, absence of objection, or lack of creditor interest can change this principle or remove the fundamental impropriety which taints a settlement that does not comply with it.

*See id.* at 178 (disapproving a § 727 settlement that would have paid $12,500 to the plaintiff and nothing to the other creditors).

 The chapter 7 process provides a well-structured mechanism for such sharing. The chapter 7 trustee's duties include the distribution to creditors of their proper shares of the assets of the estate, according to the priorities established by § 726. The dismissal of a § 727 claim at the same time as the settlement of a § 523 claim may only be approved if the proceeds are turned over to the chapter 7 trustee for distribution to creditors according to the distribution rules and priorities of § 726.

Thus the court orders that the monetary recovery from the settlement in this adversary proceeding be turned over to the chapter 7 trustee to be distributed pro rata among the creditor body. This assures that the plaintiff will receive only what it would have after a full (and successful) prosecution of the § 727 claim. Plaintiff will not have been induced to dismiss the § 727 claim for an individual advantage that violates plaintiff's fiduciary duties to the other creditors.

### F. Notice to Creditors

 There is a deficiency in the notice that plaintiff has given to creditors of the settlement in this adversary proceeding. BRM sent notice of the settlement under the caption: "Notice of motion to compromise controversy and approve settlement terms by and between the debtors and creditor." The entire substance of the notice is as follows:

> PLEASE TAKE NOTICE that Plaintiff and Defendants have stipulated to a settlement in the above titled adversary proceeding which includes the dismissal of the cause of action based on 11 U.S.C. § 727. Pursuant to Federal Rule of Bankruptcy Procedure 2002(a), you have 20 days after the date of service of this notice to object. If a formal objection is not timely filed, the Court may enter an Order Compromising Controversy and Approving Settlement Terms.

(emphasis in original). No creditor has objected to the settlement, and none appeared at the hearing thereon. However, BRM has given no notice to creditors of the monetary terms of the settlement.

Rule 7041 provides that, "a complaint objecting to the debtor's discharge [under § 727] shall not be dismissed at the plaintiff's instance without notice to the trustee, the United States Trustee, and such other persons as the court may direct." Dismissals of § 727 claims were of "special concern" in the drafting of Rule 7041, "because the plaintiff [in those situations] may have been induced to dismiss by an advantage given or promised by the debtor." See Rule 7041 Advisory Committee Notes.

The notice must include a full disclosure of the consideration given or promised to the plaintiff for withdrawing the objection to discharge, so that other creditors have equal access to information regarding the assets, liabilities, and claims against the debtor. *See In re Taylor*, 190 B.R. 413, 417–18 (Bankr.D.Colo.1995) (holding that a creditor may not unilaterally dismiss a § 727 claim in exchange for payment, but must instead provide, *inter alia*, notice to

the creditors of the proposed consideration); *Hage v. Joseph (In re Joseph)*, 121 B.R. 679, 681 (Bankr.N.D.N.Y.1990). This rule allows third parties to oppose the dismissal of the complaint. *See State Bank v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir.1996).

Because the notice of the settlement of this adversary proceeding did not disclose the consideration to be received by plaintiff, approval must await the giving of such notice.

### IV. Conclusion

Where a creditor brings claims against a debtor under both § 727 and § 523, the plaintiff may not settle the claims by dismissing the § 727 claim and taking payment individually on the § 523 claim. Such conduct violates the fiduciary duties to the other creditors that the plaintiff has undertaken in asserting the § 727 claim. The fiduciary duty violation and the resulting tainted settlement can only be cured by turning the settlement over to the trustee for distribution to all creditors.

A further hearing is set on November 16, 1999 at 11:00 a.m. on the settlement. Because the plaintiff has not given adequate notice of the settlement to the creditors, the court orders that plaintiff give timely notice to creditors of the terms of the settlement, as required herein, and that the court requires that the settlement be turned over to the trustee for distribution under § 726.